OPINION OF THE COURT
Eugene M. Hanofee, J.
There is currently pending before this court a custody proceeding between the above-named parties wherein each is seeking to be awarded custody of Shawn Steven Boyles, born July 25, 1978. The sole matter presently before the court is an application brought on by the petitioner for an order excluding the results of a human leucocyte antigen (HLA) blood-grouping test from being offered in evidence in the custody proceeding. In addition, the petitioner requests an order prohibiting the respondent from raising the question of paternity in the custody proceeding.
The record indicates, at the inception of this proceeding, the parties, on consent and with advice of counsel, agreed that a blood-grouping test be done. The results of that test proved inconclusive in that the petitioner was not excluded as the father of Shawn. Thereafter, the parties once again consented, with the advise of counsel, to take a further blood-grouping test known as a human leucocyte antigen blood-tissue test, which positively excluded the petitioner as being the father of Shawn. The petitioner’s attorney does not dispute the results of the test. At this time, at the eve of the custody hearing, the petitioner has made the instant application arguing that the best interests of the *17 child, estoppel and public policy grounds should prohibit the raising of the paternity question at this point in time. Petitioner argues that there is no provision for blood tests in article 6 of the Family Court Act. It is noted that the language of the act regarding blood tests is significantly different between article 5, which contains the mandatory “shall” versus article 4 which contains the discretionary “may”. The court notes, and it is pointed out by the petitioner, that article 6 does not mention blood tests in any manner, leaving the catchall of section 165 of the Family Court Act to control, which dictates that when the procedure is not prescribed in the act, the provisions of the CPLR will control. CPLR 3121 (subd [a]) authorizes blood examinations when the blood relationship of a party, or of an agent, employee or person in the custody or under the legal control of a party, is in controversy. Accordingly, the court is of the opinion that it has the authority to order a blood-grouping test when a blood relationship is in controversy in an article 6 proceeding. It would seem ludicrous to this court to compel a party to commence an article 5 proceeding in order to obtain a blood test when there is a question of paternity. In any event, as set forth above, the parties in this case consented to the HLA blood test. It would seem inappropriate to the court to prohibit the result of the blood test from being offered in evidence in that it tends to prove one of the principal facts in issue is relevant and admissible. (Matter of Oliver v England, 48 Mise 2d 335.) In addition, it is noted that the petitioner was willing to reap the benefits of the results had they not excluded him. Accordingly, he should also be subjected to the results when they do exclude him.
Also in support of his application, the petitioner argues the doctrine of estoppel and public policy grounds, citing the cases of Hill v Hill (20 AD2d 923) and Matter of Virginia E. E. v Alberto S. P. (108 Misc 2d 565). The court differentiates those cases from the one at bar in various respects. Firstly, in this case the results of the blood tests are already before the court. The petitioner cannot “have his cake and eat it too”. He consented to the HLA blood test, obviously in the hope that it would substantiate his argument that he is the child’s natural father. Just be *18 cause the results of the blood test do not support the petitioner’s argument, does not make it any less relevant to this proceeding. Secondly, the parties were divorced at the time of conception of the child. There is, in addition, a question as to whether the parties were even living together at the time of conception. There is also a dispute as to when the petitioner was first apprised by the respondent that the child was not his. The respondent states that she told the petitioner prior to their remarriage in February, 1978. The court notes that evidence of the similarity of appearance is not admissible in a paternity proceeding. In the case at bar, the child is obviously of Polynesian and/or Oriental descent. It is noted that the child was conceived and born in Hawaii. The parties, in this case, are Caucasian. This is noted in order to draw a distinction from Hill v Hill (supra). There, the father had no reason to believe he was not the father; here, the appearance of the child, it seems, has to create a question in a reasonable person’s mind as to whether it is his child, under the circumstances present in this case.
In this case it is the court’s opinion that common sense and public policy will not be outraged should the court deny the application and allow the HLA blood test results into evidence and allow the paternity question to be determined. In this case the court is compelled to allow the HLA blood-grouping test into evidence in that the test was done on consent, the results are before the court and it has such a significant bearing on the issues. The court cannot condone turning its back and ignoring the fact that the petitioner is not the child’s father. The court readily admits that, quite probably, the petitioner is the child’s “psychological parent”. The Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543) has totally rejected the proposition that a psychological parent may acquire some sort of squatter’s rights in another’s child.
The significance of Bennett v Jeffreys (supra) to this proceeding is evident and, quite possibly, the basis for the instant application, in that its mandates significantly change the issues from merely best interests to extraordinary circumstances and best interests.
Accordingly the motion is denied.