OPINION OF THE COURT
William Rigler, J.
The matter having come before the court, a hearing and argument having been heard, the court renders the following decision:
As far as the court has been able to determine, this is a matter of first impression in this State if not in the United States. This application concerns the right of a defendant father, who has been diagnosed as having Acquired Immune *25 Deficiency Syndrome (AIDS) to visit pendente lite with his 1 Vi-year-old daughter. Once all the extraneous matters are removed, the case is reduced to the ability of the father to care for the child during visitation.
The court initially notes that in spite of all the media and other hysteria which has surrounded this disease, the parties to this action as well as all the court personnel, conducted themselves in a most professional manner. This permitted the case to proceed with the correct amount of decorum and mutual respect which is especially important in the emotionally charged area of child custody and visitation.
The court now addresses the application itself. The parties met in a bible study group in 1984. Defendant husband informed plaintiff wife of his homosexuality. The parties started to live together in December 1984. Plaintiff became pregnant in May 1985. The parties were married in early 1986, after defendant’s divorce from a previous marriage became official. The child was born soon after. Defendant is presently employed as a health-care worker at a hospital.
During the summer of 1986, defendant developed tuberculosis. He was hospitalized, treated and released. During this hospitalization, he was evaluated by a psychiatrist, who determined that defendant was very anxious but not a danger to himself or others. Subsequently, during the summer defendant admitted himself to a hospital for anxiety. The anxiety was found to be related to his illness and marital problems. Again he was determined to be no danger to himself or others. The parties started marriage counseling upon defendant’s discharge from the hospital.
In December 1986 defendant developed a cough which was diagnosed to be pneumocystis carinii pneumonia (PCP). A final diagnosis of AIDS was made at this time as well. Upon the AIDS diagnosis, plaintiff requested that defendant not return to the marital home when he was discharged from the hospital. He has honored the request.
The court heard the testimony of Dr. Jeffrey Vieira, who was qualified as an expert. Dr. Vieira is the chief of infectious diseases at Brooklyn-Caledonia Hospital as well as being associated at Downstate Medical School where he teaches. The court found his testimony to be totally credible.
Dr. Vieira testified about the nature of AIDS. It is transmitted through direct mixing of bodily fluids. He explained that the known methods of transmittal are sexual contact, the *26 sharing of needles among intravenous drug abusers and the transfusion of blood (though this last method has been drastically reduced with the discovery of a blood test for the disease). Another possible transmission method is through breast milk. The doctor explained that theoretical transmission routes are through saliva, bite wounds, sharing a handkerchief or tissues and the sharing of dining utensils (i.e., a glass or a fork) though he noted that there are not any known transmissions through these methods. He also referred to an ongoing study being conducted by Montifiore Medical Center which has followed 50 families in which one member had AIDS. The study has found that there has been no transmission of the AIDS virus within the close contact of familial groupings.
Defendant is Dr. Vieira’s patient. Dr. Vieira has seen defendant at least every three weeks since the summer of 1986. Since January of this year he has seen defendant more often than that.
Dr. Vieira testified that upon his release in December of 1986, defendant was in a good emotional state. He was anxious but this was reasonable given the AIDS diagnosis. Defendant is presently taking the drug AZT, which appears to inhibit the progress of the disease. The drug may also suppress the likelihood of transmitting the virus. Defendant is tolerating the drug well. Defendant was given medical approval to return to his health-care work. Dr. Vieira, as a final analysis, determined that defendant is a responsible, reasonable person who knows the nature of the disease which afflicts him. Defendant is also aware of the precautions which must be taken to avoid its spread (i.e., avoid sexual contact or have "safe sex”, avoid kissing in which a large amount of saliva would pass, do not share utensils which have been immediately used, do not share tooth brushes or razors, and clean spills of urine or other bodily secretions with bleach).
The evidence shows that since the parties’ separation in December of 1986, defendant has seen his daughter on a fairly regular basis. Plaintiff has insisted that the visits be supervised and all but one have been. However, the supervisors who have been present at these visits have received little or no instructions concerning their duties.
One supervisor, who knows both the parties, testified that both of them are good parents. Defendant during his visits with the child would feed and change the baby and play with *27 her. The supervisor related conversations in which the defendant commented that he just wanted to live long enough to help raise the child.
Defendant presently has his own apartment. He remains in his health-service position, taking the precautions necessary to protect his patients and co-workers. He admitted to being depressed once his diagnosis of AIDS was confirmed.
Plaintiff wife has been tested and the test was negative. The doctors, given plaintiff’s negative test result, did not deem it necessary to test the child. Plaintiff fully accepted this advice. Plaintiff has explained on the witness stand that her main concern is defendant’s ability to care for the child not that the child will contact AIDS from the defendant.
Given the testimony presented and especially that of Dr. Vieira, the court holds that the issues of the defendant having AIDS and the possible transmittal of the AIDS virus should play little if any role in determining this pendente lite application for visitation. This decision is additionally based on the fact that the defendant being a health-care worker is intimately aware of the precautions he must take to protect his family and friends.
Turning then to the issue of visitation, plaintiff is concerned that defendant cannot care for the child. She raises only one significant incident in which she alleges that the child’s diaper was not timely changed as grounds for requiring supervised visitation and not permitting overnight visitation. This fear is belied by the facts. Defendant has cared for the child throughout her life (albeit the last few months he has been limited due to the restrictions plaintiff has placed on visitation). In fact, plaintiff testified that she wants the child to have a strong relationship to her father, the defendant. This strong relationship can only be developed in a visitation plan which is as liberal and unrestricted as possible.
The courts have consistently held that the determining factor in child visitation is the best interest of the child. (Corsell v Corsell, 101 AD2d 766 [1st Dept 1984]; O’Neil v O’Neil, 60 AD2d 571 [2d Dept 1977], appeal dismissed 46 NY2d 1057 [1979].) However, in connection with the application of this rule the courts have noted: "[A] parent may not be deprived of his or her right to reasonable and meaningful access to the children by the marriage unless exceptional circumstances have been presented to the court. The term 'exceptional circumstances’ or 'exceptional reasons’ is invari *28 ably associated with a situation where either the exercise of such right is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access”. (Strahl v Strahl, 66 AD2d 571, 574 [2d Dept 1979], affd 49 NY2d 1036 [1980]; Weiss v Weiss, 52 NY2d 170 [1981]; Twersky v Twersky, 103 AD2d 775 [2d Dept 1984].)
Clearly in the present matter there are no "exceptional circumstances” to require limitation of visitation. The evidence presented is devoid of any proof that unsupervised visitation with the defendant would be "inimical to the welfare” of the child and obviously he has not forfeited his right to access.
The court notes that defendant is entirely capable of caring for the child. In fact, he has had training in pediatric care as part of his career. Furthermore, plaintiff recognized defendant’s abilities because she "permitted” unsupervised visitation in May. Thus, this court will not order supervised visitation.
Given the young age of the child and the recent limited access which defendant has been afforded to see the child, the court will order visitation one day a week for the month of September from 10:00 a.m. until 6:00 p.m. This visitation will be unsupervised. It is the court’s expectation that this matter will be on the Trial Calendar by October. If it is not placed on the October Calendar, then commencing in October the defendant can have unsupervised visitation one afternoon/evening per week and overnight visitation on every other weekend, or when mutually agreed upon by the parties, providing he lives up to all the precautions suggested by Dr. Vieira.