*719 OPINION OF THE COURT
Bernard F. McCaffrey, J.
The underlying issue to be determined in this matrimonial matter is whether the defendant husband can compel the plaintiff wife to undergo a physical examination and HIV blood test for AIDS upon the allegation that she has engaged in a series of extramarital affairs.
Defendant served a notice to submit to a physical examination on plaintiff pursuant to CPLR 3121. Plaintiff rejected defendant’s notice alleging that it was both substantively and procedurally defective. Thereafter, defendant moved for an order directing plaintiff to comply with the aforementioned notice and plaintiff cross-moved pursuant to CPLR 3103 and 3122 for a protective order, staying and vacating said notice.
Significantly, defendant’s notice is limited to a demand for a "physical examination”. It was not until the instant application that defendant’s specific intent, to determine whether plaintiff was infected with the AIDS virus, was revealed. Defendant has alleged in his moving papers that such an examination is warranted due to plaintiff’s having engaged in a series of extramarital affairs and would be a "determinant factor” in deciding her ability as a custodial parent. Upon oral argument defendant further contends that the wife’s behavior constitutes egregious conduct and should be considered as a fault factor under equitable distribution.
The law with respect to discovery in matrimonial proceedings has essentially evolved on two distinct paths. While broad disclosure has always been favored concerning financial issues, discovery as to marital fault has proceeded on a much slower, restricted pace. With the enactment of the Equitable Distribution Law and compulsory financial disclosure, these two divergent paths have become a strict dichotomy.
"Full financial disclosure is the rule in an equitable distribution case, rather than the exception (see Domestic Relations Law, § 236, part B, subd 4; Rubin v Rubin, 87 AD2d 587)” (Van Ess v Van Ess, 100 AD2d 848, 849 [2d Dept 1984]).
Conversely, except in egregious cases which shock the court’s conscience, marital fault is no longer a factor for consideration in equitable distribution (O’Brien v O’Brien, 66 NY2d 576 [1985]; Blickstein v Blickstein, 99 AD2d 287 [2d Dept 1984]). Thus, discovery concerning marital fault has been severely circumscribed, if not eliminated.
*720 At the outset, the court notes that the moving papers only address the issue of custody and not marital fault.
However, in order to avoid needless additional motion practice and as a guideline to the bar, the court finds that, standing alone, an allegation of engaging in a series of extramarital affairs does not constitute such egregious conduct under equitable distribution so as to constitute an exception to the discovery rule. This is particularly so when the discovery sought is in the form of requiring the plaintiff wife to undergo a physical examination and invasive HIV blood test for AIDS. The court further notes that unsubstantiated allegations in emotionally charged matrimonial litigations should not be allowed to be used to subject one’s spouse to undergo unnecessary, objectionable and invasive medical procedures. Mere unsubstantiated allegations are not enough. The allegations must be relevant, material and substantiated and the reasons compelling for such an examination and test. None of which are present in this matter. To the contrary. This emotionally charged matrimonial action has had a continued series of disputes principally regarding custody and visitation including a recent allegation by the plaintiff wife of sexual abuse against the defendant husband involving the parties’ daughter which is currently under investigation.
Furthermore, for the most part, courts are reluctant to grant pretrial discovery in child custody matters (46 NY Jur 2d, Domestic Relations, § 298). It is, however, a generally accepted principle that a party to a contested custody proceeding places their physical and mental condition in issue by seeking custody (Rosenblitt v Rosenblitt, 107 AD2d 292 [1985]; Proschold v Proschold, 114 Misc 2d 568 [1982]). Where both parties seek sole custody of the infant issue of their marriage, a parent’s health is a relevant yet certainly not the only consideration (Matter of Darlene T., 28 NY2d 391 [1971]).
Accordingly, while CPLR 3121 is applicable to matrimonial actions, the Court of Appeals has recognized the potential for abuse in such cases stating "the court’s broad discretionary power to grant a protective order 'to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts’ (CPLR 3103) should provide adequate safeguards” (Wegman v Wegman, 37 NY2d 940, 941 [1975]).
CPLR 3121 (a) provides in pertinent part as follows: "After commencement of an action in which the mental or physical condition or the blood relationship of a party * * * is in *721 controversy, any party may serve notice on another party to submit to a physical, mental or blood examination by a designated physician * * * A copy of the notice shall be served on the person to be examined. It shall specify the time, which shall be not less than twenty days after service of the notice, and the conditions and scope of the examination.”
Therefore, when a party’s mental or physical condition is at issue in a matrimonial or related proceeding and the evidence sought is "material and necessary” pursuant to CPLR 3101 (a), courts have regularly permitted or ordered professional examinations.
For example, blood tests are commonly employed in divorce and paternity proceedings (Golser v Golser, 115 AD2d 695 [1985]; Michaella M. M. v Abdel Mortem, El G., 98 AD2d 464 [1984]). Further, a court may order a blood-grouping test when blood relationship is in controversy in custody proceedings (Boyles v Boyles, 119 Misc 2d 16 [1983]). Finally, as in this instance, courts routinely rely on independent social and psychological examinations.
While ordinarily it is the plaintiff’s condition at issue, it is clear that CPLR 3121 applies equally as well to the defendant (3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3121.10). In at least two recent cases, defendants were directed to submit to physical examinations following allegations that they had infected their respective partners with genital herpes (Maharam v Maharam, 123 AD2d 165 [1st Dept 1986]; Shalhoub v Viverito, 133 Misc 2d 765 [1986]).
Alternatively, it has been argued that in the sensitive area of family law a more flexible standard than "material and relevant” may be appropriate (see, Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3121:6, 1988 Pocket Part, at 294).
Likewise, the court notes that in a recent case where an order was sought to compel a party in a custody dispute to submit to an AIDS test, Justice Kristin Booth Glen held that the plaintiff had failed to establish a compelling need for the test and denied plaintiffs application (Doe v Roe, 139 Misc 2d 209 [1988]).
However, in the present case, defendant has failed to satisfy even the lesser of these two standards. The defendant’s moving papers are essentially conclusory in nature and devoid of any supporting affidavits or documentary evidence to substantiate his shocking charge.
*722 Furthermore, while a parent’s infidelity or sexual indiscretions may be considered where it can be shown that such factors would adversely affect the child’s welfare (Dornbusch v Dornbusch, 110 AD2d 808; Pawelski v Bucholtz, 91 AD2d 1200) even assuming, arguendo, that defendant’s allegations of promiscuity are valid, he has not even alleged that plaintiff has been infected with the HIV (Human Immune Deficiency) virus or contracted this deadly disease. Pure speculation of this sort is insufficient to compel such an invasive procedure.
Moreover, although the New York State Department of Health has reported that as of December 18, 1987, 296 persons in Nassau County have been stricken with this tragic illness (Focus on AIDS, Newsday, Apr. 5, 1988) there is no evidence that plaintiff fits into any of the high-risk groups.
More specifically, it has been reported that the "at risk” groups for AIDS consists of 59% homosexual or bisexual males; 31% male and female intravenous drug users; 2% female sex partners of males with AIDS; 2% children who acquired the disease prenatally from their mother and 1% hemophiliacs or those who receive transfusions of infected blood or blood products (see, NY St Dept of Health pamph, Acquired Immune Deficiency Syndrome: Questions & Answers About AIDS, May 1987).
In addition, defendant’s notice is procedurally defective in that it fails to comply with the requirements of CPLR 3121. The aforementioned section mandates that the notice shall specify "the time, which shall be not less than twenty days after service * * * and the conditions and scope of the examination.” (CPLR 3121 [a].)
Yet, even the most cursory review of defendant’s notice reveals that although it was served on or about January 20, 1988, it directs plaintiff to appear for a physical examination on February 3, 1988, or less than the 20 days required by statute.
Secondly, the notice fails to specify the conditions and scope of the exam requested. In fact, it was not until the present application that it became evident that defendant’s actual intent was to have plaintiff submit to a blood test to determine if HIV antibodies were present. However, the presence of HIV antibodies only certifies that a person has been exposed to the AIDS virus. Critically, it does not mean that the individual tested will develop any symptoms. The number of persons infected with the HIV virus but who do not suffer *723 from the disease has been estimated at between 1 and 1.5 million (Doe v Roe, supra, at 211). Therefore, contrary to defendant’s assertion, a positive test result may not automatically be a "determinant factor” with respect to plaintiffs ability to be a custodial parent. Indeed, at least one New York court has determined that a party suffering from AIDS was not precluded from enjoying unsupervised pendente lite visitation with their issue (Jane W. v John W., 137 Misc 2d 24).
Lastly, the notice directed plaintiff to appear before a physician specifically designated by defendant. "While it is entirely appropriate for trial courts, confronted with a contested custody issue, to call upon qualified and impartial health care professions to render reports based upon examinations of the children and parents, courts have expressed a preference that such examinations be conducted by neutral and impartial professionals” (Rosenblitt v Rosenblitt, supra, at 295; see also, Kesseler v Kesseler, 10 NY2d 445, rearg denied 11 NY2d 721).
As the tragedy of AIDS continues to grow virtually unabated throughout society it is hardly surprising that it has had an increasingly strong impact in the area of matrimonial and family law.
When confronted with this issue courts have an obligation to deal with the dilemma with sensitivity, understanding and dignity.
Perhaps at no other time in recent history has there been an issue capable of causing such anxiety and fear. The potential for abuse in these instances is almost unlimited. Unfounded or cavalier accusations in this regard can cause the most severe and hostile consequences.
Accordingly, it would be patently unjust to compel plaintiff to submit to an HIV blood test or similar examination under these circumstances. Mere allegations do not provide a sufficient predicate for such intrusive action. Therefore, defendant’s application is denied. Plaintiff’s cross motion for a protective order vacating defendant’s notice is granted.