STATE

v.

Jose RAMOS.

No. 87–400–C.A.

Supreme Court of Rhode Island.

Feb. 2, 1989.

James E. O'Neil, Atty. Gen., Nicholas Trott Long, Jeffrey Greer, Asst. Atty. Gens., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

In this criminal case a Superior Court jury convicted the defendant, Jose Ramos, of first degree sexual assault, first degree child molestation, and assault with a dangerous weapon. He appeals.

The testimony adduced at trial concerning the alleged criminal assaults occurring between February and October of 1984, much of which testimony required the aid of an interpreter, is frequently contradictory. Consequently for the purposes of this appeal only we shall extricate a compendium of the victim's version of the facts. The complainant, hereafter known by the fictitious name Mary, was born in Puerto Rico on January 20, 1972. In December of 1983 Mary moved from her native homeland to the United States with her mother, brother, sister, and her mother's long-time boyfriend, defendant Jose Ramos (Ramos). They leased a first-floor apartment in a building located at 18 Sumter Street in Providence. This flat had two bedrooms. These rooms were connected by a bathroom with doorways leading into both. The three children slept in one bedroom while the two adults occupied the other.

Mary claimed that in February of 1984, while her sister, Maria, lay sleeping on a mattress placed on the floor beside her bed, defendant crept into the bedroom through the bathroom passageway, put a knife to her throat, and forced her to engage in sexual intercourse. Mary, to no avail, pleaded with Ramos to stop. After performing the act but before leaving the

room, Ramos, still brandishing the knife in his hand, threatened to kill everyone in the household if Mary revealed the incident to anyone. The defendant then returned to his bedroom via the bathroom. Mary remembered the February date, she stated, because the Department for Children and Their Families had recently placed her brother in a foster home.

Mary also testified that during the summer of 1984, while her mother and sister were both in the hospital, Ramos again raped her. According to Mary, defendant entered the bathroom while she was urinating and ordered her to stand up against the wall. He then forced Mary to engage in painful vaginal intercourse at knife point. Before departing, defendant again renewed his threat to murder members of her immediate family if she told anyone of his activities.

On October 24, 1984, the day before she returned to Puerto Rico to live with her mother's family, Mary awoke to find Ramos already engaging in sexual intercourse with her. She stated that defendant wielded the same knife used in the prior rapes. The defendant then issued his final warning to Mary not to disclose his actions to anyone.[1]

When questioned by her mother about whether she was being sexually abused by Ramos, Mary denied any wrongdoing on defendant's part. Two months after she arrived in Puerto Rico, however, Mary informed her grandmother and her aunt about the sexual attacks. A Providence County grand jury returned an indictment charging Ramos with one count of assault with a dangerous weapon, one count of assault with intent to commit sexual assault, one count of child molestation, and two counts of sexual assault.

At trial the state called Laura Nevel, M.D., an obstetrician and gynecologist, as an expert witness. Doctor Nevel testified that she examined Mary on January 22, 1985, for evidence of vaginal penetration. Based upon the examination, the doctor found "penetration possible but not definite." Although the hymen of a thirteen-year-old girl normally covers about 50 percent of the vaginal entrance so that one finger may be admitted with some difficulty, Dr. Nevel testified that she could easily insert two fingers into Mary's vagina during the examination without any resulting discomfort. The state's expert physician stated that although she found no obvious caruncle or torn edges of the hymen generally associated only with childbirth or very traumatic intercourse, Mary's hymen was stretched, allowing for easy penetration into her vagina. Thus, comparing her examination of Mary to vaginal examinations performed on other thirteen-year-old females, Dr. Nevel concluded that she was "fairly certain" Mary's vagina had been penetrated.

The jury found defendant guilty of assault with a dangerous weapon (count 1), first degree sexual assault (count 3), and first degree child molestation (count 4). The trial justice denied his motion for a new trial and sentenced Ramos to the following: eighteen months' imprisonment on count 1; ten years' imprisonment on count 3, five years to serve and five years suspended; and twenty years' imprisonment on count 4, five years to serve and fifteen years suspended. The sentences were to run consecutively. On appeal, defendant asserts several arguments in his favor, one of which is dispositive of the case. In the interest of providing guidance to counsel to assist in the administration of justice, we shall address these contentions, supplementing additional facts when necessary. The defendant's initial argument presents a question of first impression.

## COURT–ORDERED PHYSICAL EXAMINATIONS
### OF COMPLAINING WITNESSES

The defendant contends that the trial court abused its discretion in refusing to

---

1. Mary initially testified on cross examination that the first incident occurred in February and the second in October of 1984. She later recanted her testimony to state that the first incident happened in February, the second incident oc- curred during the summer, and the third rape took place on October 24, 1984. Later, Mary testified that defendant "was doing it almost every day."

order Mary to submit to an independent medical examination when there was reason to believe that she was still a virgin and that the alleged sexual assaults never occurred. This court has never considered whether a trial justice may compel a complaining witness in a criminal trial to undergo such a physical examination. A number of courts, however, have held that a trial justice has discretionary power to order a witness in a criminal trial to submit to a psychiatric examination. *See, e.g., State v. Lovelace,* 191 Conn. 545, 469 A.2d 391 (1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984); *State v. Butler,* 27 N.J. 560, 143 A.2d 530 (1958); *State v. Carlson,* 392 N.W.2d 89 (S.D. 1986). This court in *State v. Johnson,* 119 R.I. 749, 383 A.2d 1012 (1978), upheld the court-ordered psychiatric examination of a criminal defendant who had pleaded the defense of insanity. Courts have also ordered parties to undergo blood tests in order to determine whether they had contracted an infectious disease such as AIDS (acquired immune deficiency syndrome). *See People v. Cook,* 143 A.D.2d 486, 532 N.Y.S.2d 940 (1988); *People v. Thomas,* 139 Misc.2d 1072, 529 N.Y.S.2d 429 (1988); *Mosele v. Bures,* 139 Misc.2d 409, 528 N.Y. S.2d 976 (1988); *see also Haywood County v. Hudson,* 740 S.W.2d 718 (Tenn.1987). *But see Guardianship of Anthony,* 402 Mass. 723, 524 N.E.2d 1361 (1988) (reversing Family Court order directing medical staff at school for mentally retarded to conduct AIDS tests on residents allegedly engaging in sexual activity); *Anne D. v. Raymond D.,* 139 Misc.2d 718, 528 N.Y.S. 2d 775 (1988) (husband's allegation that wife engaged in extramarital affairs insufficient to support court-ordered physical examination and AIDS test).

Although no court rule, statute, or case law in Rhode Island authorizes court-ordered physical examinations of complaining criminal witnesses, there are provisions on point in the civil area. Prior to 1987, the General Laws permitted a trial justice to require a reasonable physical examination of the injured party in personal injury cases. G.L.1956 (1985 Reenactment) § 9–17–21 (repealed 1987). Rule 35(a) of the Superior Court Rules of Civil Procedure similarly allows the trial court to order a party to submit to a physical or mental examination if the physical or mental condition of that individual is in controversy and good cause has been shown. *See Raymond v. Raymond,* 105 R.I. 380, 385, 252 A.2d 345, 348 (1969); *see also* Fed.R. Civ.P. 35(a).

■ We hold that a trial justice has discretionary power to require a witness in a criminal trial to submit to an independent physical examination only under the most compelling of circumstances. In situations in which the defendant has shown substantial need and justification and no violation of substantial rights will result, the trial justice has discretionary power to order the complainant to undergo a physical examination. The practice of granting physical examinations of criminal witnesses must be approached with utmost judicial restraint and respect for an individual's dignity. In determining whether to order an independent medical examination, the trial justice should consider (1) the complainant's age, (2) the remoteness in time of the alleged criminal incident to the proposed examination, (3) the degree of intrusiveness and humiliation associated with the procedure, (4) the potentially debilitating physical effects of such an examination, and (5) any other relevant considerations.

■ In the case at bar defendant sought the trial court's permission to have a gynecological examination performed on a minor. It goes without saying that this type of examination is both intrusive and embarrassing, especially for children. Approximately four years had elapsed since the rapes allegedly took place. The defendant argues that an independent physical examination was necessary to show that Mary's hymen was still intact. The trial justice, however, correctly noted that the state, in order to sustain a conviction in sexual assault cases, need not prove that the victim's hymen had been ruptured. This court has stated that the testimony of a competent complaining witness about a violative act of sexual intercourse in itself is sufficient to prove penetration. *State v.*

*Pettis,* 488 A.2d 704, 707 (R.I.1985). There is no indication that Mary failed to comprehend forced sexual penetration. In light of the foregoing analysis, we conclude that the trial justice committed no abuse of discretion in denying defendant's request for an independent gynecological examination of the complainant.

## RESTRICTING CROSS EXAMINATION

Our second consideration is whether the trial justice incorrectly restricted defendant from cross-examining Mary. The defendant claims that the trial court abused its discretion in limiting the cross examination of Mary to preclude defense counsel from emphasizing her previous denial of abuse and adequately exposing the number of opportunities she had to report the alleged sexual assaults. Although defendant is technically correct, we conclude that any error committed by the trial court was harmless. The defendant excises several portions of the trial transcript in support of his argument.

"THE DEFENDANT: When your brother went to the foster home, didn't they bring you to the hospital—

"THE INTERPRETER: I'm sorry, I didn't get the last half.

"THE DEFENDANT: Did they not bring you to the hospital with your sister?

"THE STATE: Objection, your Honor.

"THE COURT: Sustained.

"THE DEFENDANT: [Mary], were you ever asked by anyone whether or not Mr. Ramos was abusing you?

"THE STATE: Objection, your Honor.

"THE COURT: Sustained.

"THE DEFENDANT: Your Honor, I believe it goes to her credibility.

"THE COURT: Sustained.

"THE DEFENDANT: [Mary], did you ever deny that Jose Ramos abused you?

"THE STATE: Objection, your Honor.

"THE COURT: Sustained.

" * * *

"THE DEFENDANT: You took medication, is that correct?

"ANSWER: Yes.

"THE DEFENDANT: You got that from a doctor, is that correct?

"ANSWER: Yes.

"THE DEFENDANT: And did your mother take you to the doctor all the time?

"THE STATE: Objection, your Honor.

"THE COURT: Sustained.

"THE DEFENDANT: Did you ever tell your doctor that Jose Ramos was abusing you sexually?

"THE STATE: Objection, your Honor.

"THE COURT: Sustained. Isn't the evidence here, on the state of the evidence that no one was ever told until January 1985—rather, I shouldn't say that, the first time it was disclosed was in October of 1984 or just before Christmas in 1984?

"THE DEFENDANT: Believe it was—

"THE COURT:—in Puerto Rico.

"THE DEFENDANT: In '84.

"THE COURT: Or January of '85.

"THE DEFENDANT: This goes to her credibility, your Honor, as to her opportunity to relate the lack of threats, et cetera. The reason why she said she didn't tell anybody. This goes directly to her credibility.

"THE COURT: Well—

"THE DEFENDANT: As to why—

"THE COURT: The difficulty here is there's a wide variety of questions you can ask. I think you can present that to the jury with a more restricted question. After all, she was going to school apparently. She had students. Now if there are 50 students in the classroom, are we going to go through every one of the 50 as to what she's told them? Let's find out what she's done. Can you do that with a general question? I think it's legitimate."

The defendant's right to effective cross examination in criminal proceedings, *State v. Canning,* 541 A.2d 457, 461 (R.I.1988), subject to the discretionary power of the trial justice to determine the proper subjects and scope of inquiry, *State v. Vento,* 533 A.2d 1161, 1164 (R.I.1987), is well established and need not be reiterated here. If it is determined that the trial court erred in restricting cross examination, then we

must consider whether the ruling constitutes harmless error. In determining whether the error was harmless, this court considers these factors:

"the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *State v. Canning*, 541 A.2d at 461 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L.Ed.2d 674, 686–87 (1986)).

■■■ In the instant case, we believe that the trial justice unnecessarily restricted the scope of cross examination. Even though children generally are slow to report sexual assaults committed against them, prolonged silence of a victim, when coupled with direct denial, tends to cast doubt upon the complaining witness. *See generally State v. Werner*, 302 Md. 550, 563–65, 489 A.2d 1119, 1126 (1985). Although the state elicited from Mary on direct examination that she never revealed the incidents until two months after arriving in Puerto Rico because she was frightened of defendant, this testimony does not satisfy Ramos' right to cross examine on this issue. Furthermore, defendant should have been allowed to introduce evidence of Mary's insistent denial of sexual abuse to Anna V. Lewis, M.D., of the Rhode Island Hospital.

2. The defendant also argues that the exclusionary sanction deprived him of his right to compulsory process under the Sixth Amendment. Because we dispose of defendant's appeal on the threshold question of abuse of discretion, we need not address his constitutional arguments. *See State v. Silva*, 118 R.I. 408, 411, 374 A.2d 106, 108 (1977). This court has implied that exclusionary sanctions may have constitutional ramifications. *See generally State v. Engram*, 479 A.2d 716, 718 (R.I.1984); *State v. Sciarra*, 448 A.2d 1215, 1219 (R.I.1982). In *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the United States Supreme Court held the exclusion of a defense witness' testimony appropriate and constitutionally permissible

■■■ Having determined that the trial court unduly restricted cross examination, we next address harmless error. The trial justice allowed extensive cross examination of the complainant, which disclosed numerous inconsistencies in her testimony and directly affected her credibility. In addition, the record reveals that the complainant's mother testified that Mary had denied being sexually abused by defendant in response to her inquiries. Moreover, the following exchange took place on cross examination:

"THE DEFENDANT: [Mary], did you ever tell anyone that Jose Ramos had sexually abused you prior to Christmas 1984?

"WITNESS: Where?

"THE DEFENDANT: Anywhere.

"WITNESS: In Puerto Rico.

"THE DEFENDANT: What about before Puerto Rico?

"WITNESS: No."

We are of the opinion that the testimony restricted by the trial justice was cumulative. Consequently any error in limiting defendant's cross examination was harmless.

## THE EXCLUSIONARY SANCTION

### OF RULE 16

■■■ We next turn to the determinative issue in the case. The defendant contends that the trial justice abused his discretion by precluding medical testimony pertaining to an internal examination of Mary that revealed no evidence of sexual abuse.[2] We reluctantly agree.

under the compulsory process clause where defense counsel intentionally and deliberately concealed the identity of the witness during discovery in order to gain a tactical advantage over the state. Rejecting the argument that the exclusionary sanction is never appropriate under the Sixth Amendment no matter how serious the discovery violation, the *Taylor* Court stated:

"It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adver-

In May of 1984 Mary fell from her bicycle and incurred a vaginal injury. Adib Mechrefe, M.D., chief of emergency services at St. Joseph Hospital, examined Mary and found that she had sustained a half-inch laceration on the labia minor. Consistent with routine emergency medical treatment, Dr. Mechrefe examined Mary for evidence of child abuse. He found none. His report, however, did not positively reflect this finding. During this examination, Mary never told Dr. Mechrefe or her mother that defendant was sexually abusing her.

It is apparent from an examination of the record that in the pursuit of discovery there was little depth or diligence. On March 28, 1986, the state filed a discovery request seeking summaries of the testimony of all witnesses expected to testify at trial on behalf of Ramos. The state, however, mailed defendant's copy of this request to the wrong address. There is no evidence that defendant's trial attorney received the discovery request, and consequently no summaries were provided. On April 28, 1987, less than two weeks before trial, the state, apparently realizing that certain testimonial summaries were lacking, filed a motion for more responsive answers pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure, requesting written statements of the witnesses.[3] The defendant in turn responded on the thirtieth of April 1987 that he possessed no such written statements and further stated that the prosecution had the

medical reports and summaries of all testimony expected to be elicited at trial.

On May 4, 1987, the day that trial opened, the state moved in limine to limit Dr. Mechrefe's testimony under Rule 16 to matters expressly contained in his medical report. The basis for preventing Dr. Mechrefe from testifying to findings not explicitly covered in his medical report, the state argued, was defendant's failure to provide any indication up to the eve of trial that the doctor would testify to any other extrinsic matters. The following exchange took place during the pretrial motion hearing.

"THE COURT: Do you have the testimony that is going to be submitted on behalf of Dr. A. M. Mechrefe?

"THE STATE: I have his report, but I have nothing else.

"THE COURT: Where is his testimony, Mr.—

"THE DEFENDANT: Your Honor, when I answered discovery, and they asked for a summary or written statement, my statement to the Attorney General was back in 1985, 'refer to the emergency room report of St. Joseph's Hospital, for the other doctors refer to the emergency room report. For R.I. Hospital, refer to the enclosed Rhode Island'—

"THE COURT: Are you going to go beyond introducing or attempting to introduce those reports through him?

"THE DEFENDANT: No, your Honor. That's all I'm going to go into is the

---

sary process." *Id.* at ——, 108 S.Ct. at 655, 98 L.Ed.2d at 813.

In light of the teachings of *Taylor*, the First Circuit Court of Appeals in *Chappee v. Vose*, 843 F.2d 25 (1st Cir.1988) noted:

"Although the *Taylor* Court declined to cast a mechanical standard to govern all possible cases, it established that, as a general matter, the trial judge (in deciding which sanction to impose) must weigh the defendant's right to compulsory process against the countervailing public interests: (1) the integrity of the adversary process, (2) the interest in the fair and efficient administration of justice, and (3) the potential prejudice to the truth-determining function of the trial process. * * * The judge should also factor into the mix the nature of the explanation given for the party's failure

seasonably to abide by the discovery request, the willfulness *vel non* of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." *Id.* at 29.

The court concluded that the "only legitimate inquiry is whether preclusion was so stiff a sanction, on the facts of [the] case, as to offend the Constitution." *Id.* at 28.

3. Rule 16(b)(4) of the Superior Court Rules of Criminal Procedure permits the state, upon written request, to obtain a copy of the written statements of all persons the defendant expects to call as witnesses at trial, and "if no such statement of a witness is in the possession of the defendant, a summary of the testimony such person is expected to give at the trial."

reports. I'm not going beyond that with them.

"THE COURT: Your function with that doctor, then, will simply be to attempt to introduce those reports.

"THE DEFENDANT: That's correct, your Honor, as with all my doctors.

"THE STATE: That's all I want the doctors limited to, is just the reports, nothing more.

"THE COURT: All right.

"* * *

"THE COURT: Well, no. Are they going to be testifying about something they did which is in the reports?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Or are they going to be introducing the reports?

"THE DEFENDANT: We were going to seek to introduce the reports and to introduce testimony as to what they did in the examinations, anything that's contained within the reports.

"* * *

"THE STATE: Your Honor, I just, the reason for my motion, however, was the fact after all this time and after another request for this information, the defendant has still not provided the State with this information. Therefore, the State does not feel it should have to rely on the supplemental discovery that was provided the day of trial. The State would move rather the defendant should just be precluded from using that testimony.

"THE COURT: Well, I would have to know what you have and what you claim you don't have, but you are entitled to.

"THE STATE: Well—

"THE COURT: Then I would have to find out why it hasn't been provided; if I'm going to impose the sanction of preventing the defendant from introducing that testimony, I have to have some basis for it. Now you're telling me that all you're looking for are the reports of the doctors that you had. Now if you, if you're going to object to the doctors' testifying, I want to know precisely what the motion is about.

"* * *

"THE STATE: With Dr. Mechrefe, I just want the testimony limited to his report, because at this late date we have nothing that would indicate, no information he would be going beyond that report.

"THE COURT: Do you have any objection to the introduction of the report?

"THE STATE: No.

"THE COURT: Are you content, Mr. Ruginski, to limit your testimony to just that report?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. Then mark— produce the report and we'll mark it Defendant's Exhibit A for identification.

"THE DEFENDANT: Yes, your Honor.

"THE COURT: At the proper time, we'll admit it as a full exhibit. You won't have to call Dr. Mechrefe, is that correct?

"THE STATE: Pardon me, your Honor. I would not allow—I'm going to challenge his credibility as an expert witness in this area. I just have no problem with the fact that I have received the report. I just want any testimony he will try to give to be limited just to what his report states.

"THE COURT: Do you have the report?

"THE STATE: Yes I do.

"THE COURT: Does he state an opinion in the report?

"THE STATE: May I have just a moment, your Honor? It says that there's a vaginal laceration and it just lists his findings, but nothing more.

"THE COURT: So you want him produced?

"THE STATE: Yes, your Honor, and just limited to the testimony in this report.

"THE COURT: Would you produce him simply for the purpose of cross-examination, Mr. Ruginski?

"THE DEFENDANT: Your Honor, I have no problem presenting him for—as I indicated, I'm going to ask him questions just as to what he did in his report and anything that's not, nothing outside the report, and I so informed the State of that back in 1985.

"THE COURT: All right, then by 10 o'clock * * * you are to provide * * * the State with a summary of what each of those doctors are going to testify to beyond what is contained in the report. "THE DEFENDANT: Fine, your Honor."

The next day defense counsel provided summaries of each doctor's expected testimony. According to defendant's summary, Dr. Mechrefe was expected to testify that he had examined the complainant vaginally and found no evidence of sexual abuse. His report, however, made no mention of either the internal examination or the lack of indicia of child abuse. At trial Dr. Mechrefe testified that, while customary emergency medical treatment for injured minors included an examination for child abuse, only positive findings were contained in his report. The trial justice, however, limited Dr. Mechrefe's testimony to the written contents of his report and refused to allow the doctor to testify that he had examined Mary internally and ruled out child abuse. Consequently Dr. Mechrefe only testified to examining Mary and discovering a minor vaginal laceration. The trial justice also sustained the state's objection to the admission of the doctor's medical report as a full exhibit.[4]

Rule 16, Rhode Island's criminal-discovery provision, is "one of the most liberal discovery mechanisms in the United States." *State v. Coelho*, 454 A.2d 241, 244 (R.I.1982). *See State v. Powers*, 526 A.2d 489, 491 (R.I.1987). The aim of this discovery mechanism is to unearth all pertinent facts prior to trial, *State v. Concannon*, 457 A.2d 1350, 1353 (R.I.1983), and to increase the amount of evidence available to both parties, *Coelho, supra*, in order to eliminate unfair surprise and procedural prejudice at trial. *See State v. Ricci*, 472 A.2d 291, 299 (R.I.1984) (citing *Concannon*, 457 A.2d at 1353; *Coelho*, 454 A.2d at 245). Of course, the ultimate goal of the rule is to assist in ascertaining the truth. *See generally Coelho*, 454 A.2d at 244

(quoting Fed.R.Crim.P. 16 advisory comm. note). In this regard, Rule 16 imposes a duty of reciprocal discovery—that is, each party must comply with the other's timely requests for specific information provided these requests fall within the ambit of permissible discovery under the provision. *State v. Robbio*, 526 A.2d 509, 511 (R.I. 1987). Failure to cooperate with the spirit and letter of Rule 16 undermines the judicial process and subjects the noncompliant party to possible sanctioning. *Concannon*, 457 A.2d at 1353.

In order to ensure compliance with criminal-discovery rules, the trial justice has discretionary power to impose a variety of sanctions against the willful or innocent violator. Rule 16(i) provides:

"*Failure to Comply.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

In determining the appropriate sanction to apply, the trial justice should take into account four factors: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Coelho*, 454 A.2d at 245. In addition, the trial justice must consider what is "right and equitable under all of the circumstances * * *." *State v. Sciarra*, 448 A.2d 1215, 1218–19 (R.I.1982) (quoting *State v. Allan*, 433 A.2d 222, 225 (R.I.1981)). We have noted that the sanction of excluding testimony is an extreme and drastic remedy which should be exercised with caution and restraint. *State v. Boucher*, 542 A.2d 236,

---

4. The defendant argues that the trial justice erred in refusing to admit Dr. Mechrefe's report as a full exhibit. Because we reverse on other grounds, any error committed by the trial justice under the criteria promulgated in Rule 803(6) of the Federal Rules of Evidence is inconsequential.

241 (R.I.1988); *State v. Silva*, 118 R.I. 408, 411, 374 A.2d 106, 108–09 (1977). Nevertheless, we have acknowledged that the trial justice is in the best position to fashion a proper remedy for noncompliance with the discovery rule. *Coelho*, 454 A.2d at 245. This court therefore will overturn a trial justice's ruling only upon a showing of a clear abuse of discretion. *State v. Darcy*, 442 A.2d 900 (R.I.1982).

■ The trial justice in the instant case found that defendant had failed to comply with Rule 16 mandates and, in accordance with the agreement reached at the motion hearing, constrained Dr. Mechrefe's testimony to the affirmative findings in his report. On appeal defendant argues that he substantially complied with discovery dictates. Ramos claims that the absence of any positive notation in Dr. Mechrefe's report concerning sexual abuse clearly implies that the doctor had found none. The defendant's argument is without merit. In *State v. Concannon*, 457 A.2d 1350 (R.I. 1983), this court held that the summary of the expected testimony of a sexual-assault victim which stated that the defendant had "asked me to kiss his private" was insufficient to alert defense counsel to testimony concerning fellatio. In the case at bar the medical report provided no indication that Dr. Mechrefe had examined Mary and found no evidence of sexual abuse. We refuse to impose such a burdensome duty to infer on either party. To do so would usurp the purpose of the discovery dictates under Rule 16.

The defendant also asserts that he had complied with the discovery rule by supplementing the written medical report with a summary of Dr. Mechrefe's expected testimony within the time allotted by the trial justice. In these circumstances, defendant argues, the trial court abused its discretion by precluding significant testimonial evidence. The analysis set forth in *Coelho* directs this court to determine why defendant failed to disclose the content of Dr. Mechrefe's testimony until one day into trial. Ramos claimed that the doctor was a recalcitrant witness who was impossible to reach and ultimately had to be subpoenaed.

The defendant also argued that he had no indication that the state desired a summary of the doctor's expected testimony until the date of the motion hearing.

Our reading of the record reveals no evidence of an intentional and deliberate nondisclosure of information in order to gain a tactical advantage over the state at trial. Consequently we shall not presume that prejudice accrued to the state. Rather this unintentional violation of Rule 16 occurred apparently because defendant failed to gather the discoverable material through the exercise of due diligence. Despite having well over a year to interview the witness, defense counsel did not contact him until the scheduled date of trial. Although defendant had already agreed at the motion hearing to limit direct examination to the contents of the written report, the trial justice then inexplicably allowed Ramos to supplement discovery with a summary of testimony expected to be elicited at trial beyond the matters expressly contained in the report. On May 5, 1987, defendant complied with the trial court's order and provided the state with a copy of this summary before 10 a.m. Doctor Mechrefe testified on May 7, 1987. Had the prosecution known of Dr. Mechrefe's testimony concerning sexual abuse earlier, the state argues, perhaps it would have altered its trial strategy and called additional witnesses.

We do not believe that the extent of prejudice to the state was so great as to justify the exclusion of testimony relevant to the issue of sexual abuse. Having the testimonial summary in its possession for two days, the state could neither claim complete surprise at trial nor move for a continuance on the basis that it was unprepared to rebut Dr. Mechrefe's testimony. This court has held that the disclosure of an incriminating statement two days before trial is not sufficient in itself to warrant the exclusion of testimony. *See State v. Babbitt*, 457 A.2d 1049, 1051–53 (R.I.1983). As previously noted, exclusionary sanctions are properly reserved for the most blatant and flagrant transgressions. *See Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (exclusionary sanction not violative of compulsory process clause

where nondisclosure willful, deliberate, and motivated by desire to obtain tactical advantage); *Chappee v. Vose,* 843 F.2d 25, 31 (1st Cir.1988) (noting Mass. R. Crim. P. 14, Reporter's Notes comment that courts should only employ sanction for deliberate and prejudicial failure to comply with discovery order). Considering the date of Dr. Mechrefe's examination of Mary, the fact that Mary denied being sexually abused, the opinion offered by the state's expert witness, and defendant's timely compliance with the trial court's order to supplement discovery, we are of the opinion that exclusion was improper. We realize that trial judges are in the front lines and ofttimes must balance the equities of a situation within splitseconds. This is particularly difficult when "the prosecutor or defense counsel (or both) throw good sense to the winds and elect to play a win-at-any-cost game." *Chappee,* 843 F.2d at 32.

Our decision today in no way endorses the discovery practices of either party in this case. It is true that the judiciary has an interest in more diligent and straightforward discovery techniques. However, we rest our ruling on what is fair and equitable for this defendant in the totality of the circumstances and conclude that the doctor's testimony pertaining to the internal examination of Mary which revealed no physical indicia of sexual abuse should have been allowed. When both parties perform less than exemplary discovery practices, the equitable balance normally must favor the defendant. We therefore hold that the trial justice abused his discretion by precluding this testimony under Rule 16(i).

For the reasons stated, the defendant's appeal is sustained, the judgment of convictions appealed from are vacated, and the papers in this case are remanded to the Superior Court for a new trial.