January 11, 2018

**Supreme Court**

No. 2014-348-M.P.
(P1/12-463A)

State                              :

   v.                              :

John Rainey.                       :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-348-M.P.
(P1/12-463A)
Dissent begins on Page 33
Dissent begins on Page 48

State                                    :

v.                                       :

John Rainey.                             :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant, John Rainey (defendant or Rainey), is before this Court on a writ of certiorari[1] after a Providence County jury found him guilty of two counts of first-degree child molestation and one count of second-degree child molestation.  The defendant was sentenced to sixty years, with fifty to serve and ten suspended, on each count of first-degree child molestation, and fifteen years to serve on the second-degree count; all sentences are set to run concurrently.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

In the fall of 2011, Anna,[2] then an adult, disclosed to authorities that she had been sexually assaulted on multiple occasions by defendant when she was a child; he was her mother's boyfriend at the time.  On February 2, 2012, a Providence County grand jury returned a

---

[1] The defendant's trial counsel failed to file a notice of appeal.
[2] To protect the privacy of the complaining witness, who now has a family of her own, we follow our customary practice of giving child victims in these cases fictitious names.

true bill charging defendant with the following counts: (1) between October 1, 1987 and August 22, 1988, sexual penetration, to wit, penile/vaginal penetration, with Anna, a person fourteen years of age or under, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2; (2) between January 1, 1990 and December 31, 1990, sexual penetration, to wit, penile/vaginal penetration, with Anna, a person fourteen years of age or under, in violation of §§ 11-37-8.1 and 11-37-8.2; and (3) between April 1, 1992 and August 30, 1992, sexual contact, to wit, hand to breast, with Anna, a person fourteen years of age or under, in violation of §§ 11-37-8.3 and 11-37-8.4. At the time of defendant's trial in 2013, Anna was thirty-four years old; she testified that he had committed the above crimes when she was between the ages of eight and thirteen.

At defendant's trial, Anna recounted those traumatic events from her childhood.[3] When Anna was eight years old, defendant came to live with her and her mother at their home on Manton Avenue in Providence. Without a father figure in her life, Anna was happy to call defendant "Dad." However, defendant and Anna's mother drank heavily together, impacting Anna and her mother's relationship. Soon, Anna's initially pleasant relationship with defendant began to change. Her mother would often leave Anna alone with defendant when he was not working, and he was usually intoxicated. One night, when Anna was in bed, defendant—completely naked—entered her bedroom and lay down next to her. Scared, Anna pretended to

---

[3] Three of those events were the basis for the present charges against defendant; still others were admitted as evidence pursuant to Rule 404(b) of the Rhode Island Rules of Evidence. Rule 404(b) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

be asleep for the couple of minutes that defendant remained there.[4]  The next morning, Anna relayed to her mother what had happened.  Her mother told her that defendant had simply been drunk and had gone into the wrong room.  At that time, her mother was pregnant with defendant's child.

Before Anna's half-sister was born on August 22, 1988, defendant imposed himself on Anna once again.  That day, Anna was home alone with defendant.  She was sitting on the couch, curled up in the fetal position, in her pajamas watching cartoons.  The defendant approached her and asked if she wanted to do something fun; as an eight- or nine-year old, Anna believed that defendant was referring to a game and answered affirmatively.  At that point, defendant pulled her legs down and laid her flat on the couch.  He proceeded to climb on top of her, straddled over her with his legs on either side of her body.  As he removed her pants, Anna told him that she did not like what was happening.  Undeterred, defendant took off his pants.  He then rubbed his penis against her vagina.  Anna testified that, during this encounter, defendant put his penis inside her "labia."[5]  She did not tell anyone because she was scared, and she did not think her mother would believe her this time, just as she had not believed her previously.

The next incident occurred mere months after Anna's half-sister was born, just before Christmas of 1988.  The defendant brought Anna, then nine years old, to the mall so she could buy a Christmas gift for her mother.  Upon arriving in the mall parking lot, defendant told Anna he would give her money to purchase her mother's gift if she would first do something for him.  The defendant then unzipped his pants, grabbed Anna's head, and placed her mouth on his penis, all the while directing her actions.  After ejaculating in her mouth, defendant gave Anna the

---

[4] This evidence was admitted pursuant to Rule 404(b), and it is not contested on appeal.
[5] This testimony formed the basis for count 1, which we shall refer to as the Manton Avenue incident.

- 3 -

money he had promised her, and she went into the mall and bought a gift for her mother.[6]  Again, Anna told no one what had happened.  Her self-described "awkward" relationship with defendant persisted, although she "didn't know what was happening was wrong."

In the spring of 1989, defendant and Anna's mother moved Anna and her infant half-sister to Kentucky, where defendant had accepted a job.  Shortly thereafter, the four of them moved to Chicago for the same reason.  By that point, the drinking by defendant and Anna's mother had become "excessive," according to Anna.  One evening, when Anna's mother was passed out—"inebriated to the point where [she couldn't] function"—defendant said to Anna, "I want you to watch what I'm going to do to your mom."  He then made Anna hide behind a chair and watch him have sex with her mother.[7]  By this point, Anna thought of defendant as "a very scary guy."

Eventually, Anna's mother decided to leave defendant, and she, Anna, and Anna's half-sister moved back to Rhode Island without him.  They stayed with Anna's grandparents in Warwick until just after Christmas of 1989.  In the beginning of 1990, they moved to Sterling Avenue in Providence.  There, Anna learned that her mother was pregnant with defendant's child yet again.  Shortly before Anna's second half-sister was born on May 21, 1990, defendant came back into their lives, moving into the Sterling Avenue home.  However, his return was short-lived; he left soon after the baby's birth.

Despite his abbreviated return, yet another incident occurred during the short time defendant lived with Anna.  On a day when Anna's mother was out of the house, after Anna's eleventh birthday, defendant again molested her.  In defendant and her mother's bedroom, defendant forcefully pushed Anna onto the bed.  After completely undressing her and removing

---

[6] This evidence was admitted pursuant to Rule 404(b), and it is not contested on appeal.

[7] This evidence was admitted pursuant to Rule 404(b), and it is not contested on appeal.

his own clothes, defendant lay "[f]ully on top of [Anna], between [her] legs." Anna testified that "[h]e proceeded to put his penis into [her] vagina again" and then ejaculated on her stomach.[8] When he got up, according to Anna, defendant threatened to "beat the hell out of [her] mother" if Anna ever told anyone what he had done.

For reasons unrelated to the abuse, Anna's mother kicked defendant out of the house a few months later. In 1992, defendant expressed his desire to spend a weekend with his daughters, Anna's half-sisters. Anna's mother made Anna, who was then thirteen years old, go and "keep an eye on the girls." Anna's grandfather dropped her and her half-sisters off at a parking lot, where defendant was waiting to pick them up. Anna fastened her half-sisters into the back seat of the car before climbing in through the rear driver's side door. The defendant, standing at the open driver's door, reached back and grabbed Anna's breast.[9] He told her that she was "filling out very nicely." Anna testified that, by this point, she was no longer afraid of defendant, so she slapped his hand away and told him never to touch her again.

When Anna was sixteen years old, a high-school health class discussion about sexual harassment motivated her to finally reveal to her mother defendant's repeated abuse. After telling her mother, Anna was met by her mother's blank stare, followed by her mother telling her that she had heard defendant had moved out of state, so there was nothing they could do about the abuse. Anna felt that her mother did not believe her.

In 2011, Anna reported the abuse to the Providence police. Prompting Anna's disclosure was her half-sister's Facebook post, from which Anna learned that defendant had been arrested

---

[8] This testimony formed the basis for count 2, which we shall refer to as the Sterling Avenue incident.

[9] This testimony formed the basis for count 3.

for similar crimes. Anna testified that, had she not received that information, she would not have come forward with her own allegations against defendant.

In the case Anna learned about on Facebook, the alleged victim was defendant's biological daughter (by a woman other than Anna's mother), Beth.[10] However, those charges against defendant had been dropped because of Beth's unwillingness to testify when she was sixteen years old. Two years later, Beth expressed interest in Anna's case because of Beth's relationship to defendant. She texted the prosecutor on the eve of defendant's trial, which was set to start on May 30, 2013, to check on its progress. Apparently emboldened by the time that had passed since she was reluctant to testify as to her own allegations, Beth agreed to testify in Anna's case as a witness for the state. Due to the last-minute discovery revealed to defense counsel on Thursday, May 30, 2013—last-minute as to both the existence of Beth as an expected witness and the anticipated contents of her testimony—the trial justice directed the state to wait until the following Monday, June 3, 2013, to call Beth to the stand, thereby giving defense counsel the weekend to prepare.

On that Monday, Beth testified to a sexual assault that defendant, her biological father, attempted on her in 2003, when she was eight years old. Beth recounted that she went to visit her father at his single-room apartment in Cumberland for the first time since he had moved there. The defendant was angry for reasons unknown to Beth and asked her to sit on the bed. She did so, and he walked over to her yelling and calling her names. As Beth sat on the edge of the bed, defendant pushed her back on the bed with one hand and began taking his and her clothes off; Beth struggled to get up, but was unable to do so. The defendant climbed on top of her, and, because she was trying to push him away, he wrapped her arms in his belt and put them

---

[10] We again use a fictitious name in the interest of anonymity.

above her head. He then grounded his arms and legs on either side of Beth, straddling her. The defendant called her names, while simultaneously claiming to be trying to help her. Beth testified that defendant "tried to put [his penis] in [her]." She continued to explain that his penis actually touched her vagina, but, because of her struggling, he was unsuccessful in penetrating her. The defendant eventually gave up and walked away. He got dressed and went outside; she untied her hands, got dressed, called her mother to pick her up, and waited inside. Beth and defendant said nothing to one another before she left, and she told no one what had happened for approximately six years.

Like Anna, it took Beth years to reveal what defendant had done to her. She did not disclose the assault until she was fourteen years old, after which defendant was charged. While Beth was hesitant to testify against her father regarding her own allegations, leading to their dismissal, she did testify at the trial in this case. The defendant was found guilty on all three counts of molesting Anna.

The crux of defendant's appeal is that the trial justice should not have allowed Beth to testify. In support of this contention, defendant argues: (1) that the trial justice abused his discretion by failing to exclude Beth's testimony as a result of the state's violation of Rule 16 of the Superior Court Rules of Criminal Procedure; (2) that the trial justice erred by admitting her testimony pursuant to Rule 404(b) of the Rhode Island Rules of Evidence; and (3) that, even if Beth's testimony was admissible under Rule 404(b), the trial justice should have excluded it under Rule 403 of the Rhode Island Rules of Evidence. Additionally, defendant argues that the trial justice erred when he denied his motions for judgment of acquittal and for a new trial.

## II

## Discussion

### A. Rule 16

### 1. Standard of Review

In reviewing whether a Rule 16 violation occurred, "[t]his Court affords great deference to a trial justice's decision * * *, and it 'will not disturb that ruling on appeal unless he or she has committed clear error.'" *State v. Diefenderfer*, 970 A.2d 12, 23 (R.I. 2009) (quoting *State v. McManus*, 941 A.2d 222, 229 (R.I. 2008)). The standard of review in determining whether there has been a Rule 16 violation is "extremely narrow." *State v. Espinal*, 943 A.2d 1052, 1062 (R.I. 2008). Moreover, in analyzing whether the trial justice fashioned an appropriate remedy for a Rule 16 violation, we "will overturn a trial justice's ruling only upon a showing of a clear abuse of discretion." *State v. Ramos*, 553 A.2d 1059, 1068 (R.I. 1989).

### 2. Analysis

When a defendant requests discovery from the state, Rule 16(a)(7),(8) obligates the state to provide a list of witnesses it expects to call, as well as summaries of their expected testimony. "The overarching purpose of Rule 16 is 'to ensure that criminal trials are fundamentally fair.'" *State v. Briggs*, 886 A.2d 735, 754 (R.I. 2005) (quoting *State v. Gordon*, 880 A.2d 825, 832 (R.I. 2005)). After all, "[i]n our adversary system, based as it is upon a single trial held on a single occasion, it is imperative that the defense come to trial as well equipped as possible to raise reasonable doubt in the minds of one or more of the jurors." *State v. Concannon*, 457 A.2d 1350, 1352-53 (R.I. 1983). In that sense, then, the rule serves "to eliminate surprise at trial and to ensure that both parties receive the fullest possible presentation of the facts prior to trial." *State v. Langstaff*, 994 A.2d 1216, 1219 (R.I. 2010) (quoting *State v. Garcia*, 643 A.2d 180, 186

(R.I. 1994)); *see also Concannon*, 457 A.2d at 1353. Therefore, "[f]ailure to cooperate with the spirit and letter of Rule 16 undermines the judicial process and subjects the noncompliant party to possible sanctioning." *State v. Stravato*, 935 A.2d 948, 951 (R.I. 2007) (quoting *Ramos*, 553 A.2d at 1067). In considering the proper sanction for such a failure to comply, "the trial justice should take into account: (1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Coelho*, 454 A.2d 241, 245 (R.I. 1982).

In the present case, it was not until the morning of May 30, 2013, after a jury had already been chosen and was about to be sworn, that the state supplemented its response to defendant's request for discovery. The state then moved to introduce evidence pursuant to Rule 404(b) in the form of Beth's testimony. The state explained that it had not listed Beth in discovery because she had been unwilling to testify against her father before unexpectedly expressing a desire to do so, and thus the state had not intended to call her as a witness. The trial justice accepted the state's reason and agreed that this did not appear to be an instance of intentional withholding.[11]

Understandably surprised by the eleventh-hour disclosure, defense counsel strenuously objected to Beth's testimony. He cited his lack of time to prepare for her testimony and asked that she be excluded as a witness. In response, the trial justice forbade the state from calling Beth to the stand before Monday, June 3, 2013, giving defense counsel the weekend to review

---

[11] We decline to accept defendant's submission at oral argument that the prosecution's undeniably late disclosure could fairly be characterized as intentional. We glean no evidence from the record to suggest that the prosecution withheld the testimony intentionally, especially in light of the state's insistence that, when Beth agreed to testify, it informed the court and the defense the next morning. *But see State v. Stravato*, 935 A.2d 948, 955 (R.I. 2007) (holding that the trial justice committed clear error in determining that, although the state intentionally withheld the victim-impact statement, its good-faith basis for doing so made the nondisclosure unintentional).

the material as related to her. Nevertheless, the trial justice indicated that he would allow Beth to testify on that date.

The state argues that there was no Rule 16 violation because that rule only "mandates disclosure of statements made by those persons whom the State *expects* to call as witnesses," and here the prosecution did not expect to call Beth until she agreed in the final moments before trial to testify. We briefly address this argument only to say that we reject the state's characterization of Rule 16. If this Court adopted the state's purported interpretation of Rule 16, its intended purpose of "eliminat[ing] surprise at trial and * * * ensur[ing] that both parties receive the fullest possible presentation of the facts prior to trial," *Langstaff*, 994 A.2d at 1219 (quoting *Garcia*, 643 A.2d at 186), would be eviscerated and its protection rendered ineffective because parties could simply wait until the eve of trial to contact witnesses, framing their testimony as "unexpected." With that said, we hold that the trial justice did not clearly err in determining that there was indeed a Rule 16 violation here.[12]

We next address the remedy that the trial justice adopted to cure this violation. Notably, after objecting to the trial justice's ruling allowing Beth's surprise testimony, defense counsel never objected to the remedy fashioned by the trial justice—that is, the trial justice's decision to allow her to testify on June 3, giving defense counsel three days to prepare.[13] Even more

---

[12] While the trial justice did not explicitly say that the state had committed a violation of Rule 16 of the Superior Court Rules of Criminal Procedure, we infer that, because he issued a Rule 16 remedy, he determined that one had occurred.

[13] The trial justice, after ruling on the admissibility of Beth's testimony and determining that it must wait until Monday, told defense counsel, "I'll note your exception." That statement does not change our determination that defense counsel failed to object to the remedy. Defense counsel's initial objection related only to the admissibility of Beth's testimony under Rule 404(b), not to the remedy that the trial justice made to cure the Rule 16 violation, leading us to the conclusion that, even if the exception applied to the trial justice's remedy, counsel failed to tailor an objection specific enough to preserve the record. *See State v. Lyons*, 725 A.2d 271, 273 (R.I. 1999) (reiterating that under the "raise-or-waive" rule, "issues that were not preserved by a

importantly, defense counsel made no indication on the day Beth was to testify that he was not prepared. He never expressed any reluctance in proceeding after either his initial objection or after he received the material the following day.

We have recognized scenarios where, based on the clear adverse disposition of the trial justice, we do not fault counsel for failing to press the issue further. This is not such a scenario. *But see State v. Mead*, 544 A.2d 1146, 1150 (R.I. 1988) (holding that a request for a cautionary instruction would have been futile where the trial justice had twice "summarily overruled defendant's objections"). The trial justice had accommodated defense counsel, and counsel's failure to raise the issue again did not stem from any failure of the trial justice. Therefore, it is our opinion that the trial justice did not abuse his discretion in failing to craft an alternative remedy when there was no notice given to him that his original remedy might be inadequate.

Still, defendant maintains on appeal that Beth's testimony should have been excluded altogether. At the outset, we remark "that the sanction of excluding testimony is an extreme and drastic remedy which should be exercised with caution and restraint." *Ramos*, 553 A.2d at 1067. The defendant analogizes this case to *Langstaff*, 994 A.2d at 1220, wherein we held that the trial justice incorrectly allowed the prosecution to introduce Rule 404(b) evidence that it presented to the defense and the court on the morning of the second day of trial. There, we agreed with the prosecution that there was no proof that it deliberately withheld the evidence, but nevertheless determined that it was improper "for the trial justice to have permitted the introduction of this

---

*specific objection* at trial, sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal." (quoting *State v. Toole*, 640 A.2d 965, 972-73 (R.I. 1994) (emphasis added))).

Moreover, after "not[ing] [his] exception," the trial justice gave both counsel the opportunity to put "anything else [on] the record," an invitation each declined. As such, defense counsel could not rely on the trial justice's given "exception" to preserve his objection to the trial justice's chosen remedy for the state's Rule 16 violation.

- 11 -

evidence for any purpose just a few short hours after [the] defendant was apprised of it." *Langstaff*, 994 A.2d at 1220.

However, *Langstaff* is distinguishable. Rather than permitting the evidence "a few short hours" after it came to light, the trial justice gave defense counsel until June 3 to prepare for Beth's testimony. *See Langstaff*, 994 A.2d at 1220. We have previously stated that "[i]n light of * * * unexpected and crucial piece[s] of evidence, * * * the court should * * * impose[] a remedy that might at least * * * place[] the defendant in as favorable a position as he would have been had the information been furnished in [a] timely fashion." *State v. Darcy*, 442 A.2d 900, 903 (R.I. 1982). As evidence of the prejudice he suffered, defendant emphasized that "there was no mention of [Beth] during his opening statement * * *, only a brief reference during closing argument * * *, and his cross-examination of [Beth] did nothing to probe her truthfulness or her potential bias or motive to lie." And yet, defense counsel chose not to request a continuance; and, while "acceptance or rejection of a continuance is not the standard to determine if Rule 16 is violated," it is relevant as to whether defendant was prejudiced, which is the "primary factor" we consider in determining the appropriate remedy for a Rule 16 violation. *State v. Olsen*, 610 A.2d 1099, 1103 (R.I. 1992) ("[the] defendant undercuts his argument that he was prejudiced by the state's nondisclosure" in his decision to reject the trial justice's offer of a continuance); *see also Espinal*, 943 A.2d at 1063 n.16 ("We note that defense counsel chose not to move for a continuance after he became aware of the information * * *. Such a motion, if granted, would have afforded counsel an opportunity to alter his trial strategy in light of the apology.").

Defense counsel asks us to infer that, where his "cross-examination of [Beth] was noticeably meager," the allowable suggestion is that he "did not, in fact, have sufficient time to prepare," and thus was prejudiced. We decline to take such a leap. We are hesitant to make

inferences from what very well might have been a strategic decision of counsel;[14] and, because we decline to make such an inference of prejudice, we cannot say that it was an abuse of discretion for the trial justice to give defense counsel three days to "adequately prepare for trial and to plan trial strategy with his or her client." *State v. Small*, 735 A.2d 216, 218 (R.I. 1999) (mem.).

"[W]e have acknowledged that the trial justice is in the best position to fashion a proper remedy for noncompliance with the discovery rule," and we are satisfied that the trial justice here did just that. *Ramos*, 553 A.2d at 1068; *but see Coelho*, 454 A.2d at 245 (holding that "it would be unreasonable to expect defense counsel to proceed to trial that afternoon" based on the large amount of discovery material presented that morning). Therefore, the trial justice did not abuse his discretion in giving defense counsel the weekend to prepare for Beth's impending testimony.

## B. Rule 404(b)

### 1. Standard of Review

When the issue before us concerns a trial justice's decision to either admit or exclude evidence, we examine that issue under an abuse-of-discretion standard. *State v. Husband*, 162 A.3d 646, 655 (R.I. 2017). If the evidence was admitted under Rule 404(b), then "this Court is 'disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" *State v. Cavanaugh*, 158 A.3d 268, 279 (R.I. 2017) (quoting *State v. Clay*, 79 A.3d 832, 838 (R.I. 2013)).

---

[14] The state offered an alternative reason for defense counsel's brief cross-examination of Beth: the "remarkable consistency" between her various accounts. While we do not conclude which explanation is most persuasive, we do note that both possible reasons for defense counsel's brevity are plausible.

## 2. Analysis

Although other crimes are usually inadmissible to prove the guilt of a present crime, "it is generally conceded that evidence of other acts, representations, and conduct at different times, even of a criminal nature, may be received when they are interwoven with the offense for which the defendant is being tried * * *." *State v. Colangelo*, 55 R.I. 170, 173-74, 179 A. 147, 149 (1935). "In molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'" *State v. Mohapatra*, 880 A.2d 802, 806 (R.I. 2005) (quoting *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I. 1996)).

Nevertheless, under Rule 404(b), when the evidence is of prior sexual misconduct with a person other than the complainant, "'nonremote similar sexual offenses' are admissible under [its] exceptions * * *." *Mohapatra*, 880 A.2d at 806 (quoting *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). Further, the evidence "is admissible 'only when that exception is relevant to proving the charge lodged against the defendant,' and 'only when reasonably necessary.'" *Id.* (quoting *Jalette*, 119 R.I. at 627, 382 A.2d at 533). Last, if the trial justice allows the evidence, he or she "must instruct the jury on the limited purpose for which the evidence may be considered." *Id.*

### a. Remoteness and Similarity

Turning first to the question of remoteness and similarity, we start by saying that, when a defendant's prior sexual misconduct against persons besides the complainant is introduced, it "must be sufficiently similar and contemporaneous to support a ruling of admissibility by the trial justice." *Mohapatra,* 880 A.2d at 806. Both the similarity and contemporaneousness of the

acts are required for a common purpose: to "establish[] a close relationship between the evidence of other bad acts and the crime charged * * *." *State v. Brigham*, 638 A.2d 1043, 1045 (R.I. 1994). Our case law does not consider "nonremote" and "similar" to be distinct requirements, and instead the two are born from the same concept and proven in the same manner; that is, "[o]ffenses will be considered sufficiently 'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, and the form of the sexual acts.'" *Mohapatra*, 880 A.2d at 806 (quoting *Brigham*, 638 A.2d at 1045).

We are satisfied here that defendant's offenses against Anna and Beth fall within this spectrum and are "nonremote" and "similar." To start, each of defendant's indiscretions were directed against, for all intents and purposes, daughters in his life: in Anna's case, the daughter of a girlfriend who called him "Dad," and in Beth's case, his biological daughter. Each victim was around eight years old when the abuse first occurred, and away from their mother's supervision. Although the exact locations differed, the majority of the abuse occurred in what was at the time defendant's residence, where he had direct access to the victims: in Anna's case, the home he shared with her mother (with only two exceptions), and with Beth, an apartment in which he lived alone. Moreover, the manner of abuse was similar with each victim in that both cases involved penetration, successful or otherwise. *See State v. Hopkins*, 698 A.2d 183, 185 n.2, 186 n.4 (R.I. 1997) (affirming trial justice's decision that probative value outweighed unfair prejudice where the victims were abused in generally the same location, in the same manner, and at the same age by the defendant, with whom they had a similar relationship).

The defendant contends that the manner of abuse varies between the victims because Beth's abuse involved attempted penetration, while Anna's involved actual penetration. Further, Beth testified that defendant bound her, while Anna did not. As such, defendant asserts that

"[t]he incidents were not alleged to take place under the same circumstances, in the same location, or in the same pattern; nor did they contain uncannily similar facts." However, in reviewing a trial justice's admittance of Rule 404(b) evidence, "this Court is 'disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" *Cavanaugh*, 158 A.3d at 279 (quoting *Clay*, 79 A.3d at 838). Thus, we are not concerned with whether the incidents were exactly the same, nor with whether they contained "uncannily similar facts." That said, based on the aforementioned numerous chilling similarities between the indiscretions the two victims alleged, we cannot say that the trial justice abused his discretion in determining that they were sufficiently similar. *See State v. Coningford*, 901 A.2d 623, 628 (R.I. 2006) (upholding the trial justice's decision that "remoteness of the prior acts was outweighed by the probative value of the evidence" to show a common scheme, plan, or modus operandi to molest young boys).

Additionally, the length of time that spans between defendant's alleged abuse against Beth and Anna does not alter our holding. Beth testified that the assault on her took place in 2003, which was approximately eleven years after the last incident to which Anna testified. Moreover, the first assault on Anna occurred approximately fifteen years before Beth's alleged assault. Thus, the time frame between the two acts is between eleven and fifteen years. The defendant acknowledges that we have previously held that spans ranging from seven to eleven years, *Coningford,* 901 A.2d at 628; *State v. Toole*, 640 A.2d 965, 969, 971 (R.I. 1994), and ten years, *Hopkins*, 698 A.2d at 186, were permissible in a Rule 404(b) analysis. When compared to the durations we have previously upheld, the trial justice's determination that the eleven to fifteen years here was permissible was not an abuse of discretion.

What is more, we emphasize that "[r]emoteness is relative, depending upon the circumstances and the conduct in question." *State v. Pignolet*, 465 A.2d 176, 181 (R.I. 1983). When we consider the circumstances of the abuse alleged—that each victim was around eight years old the first time defendant molested, or attempted to molest, them—in light of the length of time between the acts, the eleven to fifteen years appears neither remote nor dissimilar. *See id.* at 181-82 ("[W]here the similar acts involved sexual abuse of young girls * * * the incident that occurred three years before the trial date is not remote, rather it is a part of a continuing practice of sexually abusing these girls."). Instead, mindful that remoteness is relative depending upon defendant's conduct, that eleven to fifteen years does not appear so vast where the second alleged victim was another eight-year-old girl, over whom he also exercised supervision and with whom he had a familial relationship.

Accordingly, the trial justice's finding that Beth's testimony was nonremote and similar was not an abuse of his discretion.[15]

---

[15] *State v. Pereira*, 973 A.2d 19 (R.I. 2009), is also instructive here. In that case, we addressed Rule 8(a) of the Superior Court Rules of Criminal Procedure, which allows the state to charge a defendant with numerous offenses in one indictment where the offenses are "of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." *Pereira*, 973 A.2d at 25 (quoting Rule 8(a)). "When analyzing whether offenses charged are properly joined under Rule 8(a), as a 'same or similar character' offense, we examine the base offenses charged, the location and time of the offenses, whether the offenses occurred within a close time span, the similarity of the victims, and the modus operandi of the offenses." *Pereira,* 973 A.2d at 25. The time span is a particularly important consideration, but is not, in and of itself, determinative. *Id.* at 25-26.

The joined sexual assault charges in *Pereira*, 973 A.2d at 26, 27, were "separated by a very considerable length of time,"—sixteen to twenty-one years—which certainly troubled the Court. Nevertheless, we held that, balancing all the factors, "the similarities in the statutory offenses, the similarities of the victims both in age and blood relationship to the defendant, and the similarities in the manner of operation of defendant's actions overc[a]me the undeniable temporal remoteness." *Id.* at 27. Analogizing that case to the one before us now, it reinforces our holding today that the eleven-to-fifteen-year time span, when balanced against the similarity of the offenses, was not too damning where "remoteness" is only one factor to consider.

### b. Rule 404(b) Exceptions

Having been satisfied with the trial justice's determination that Beth's testimony was nonremote and similar, we next must examine the appropriateness of the Rule 404(b) exception under which he allowed the state to admit Beth's testimony. In allowing Beth's testimony, the trial justice explained that "[a]lthough the words 'modus operandi' don't pertain to this rule, in this particular case the Court finds this is enormously relevant in light of the nature of these crimes of child molestation, sexual assault." In his limiting instruction to the jury, the trial justice told it to consider the evidence only pertaining to defendant's "motive, his opportunity, his intent, preparation, his plan as it relates to the testimony given * * * by [Anna]."[16]

Beth's testimony fits comfortably within a Rule 404(b) exception to show plan to abuse young girls of a similar age with whom he had a similar relationship.[17] *State v. Merida*, 960 A.2d 228 (R.I. 2008), then, is helpful. In *Merida*, 960 A.2d at 232, we held that the trial justice did not abuse his discretion in finding that the Rule 404(b) evidence was "part of a common scheme or plan and * * * relevant to show motive, intent, and plan to abuse children of similar age in a somewhat similar manner." In so finding, the trial justice in that case considered the following: "both * * * [girls] * * * alleged digital penetration; * * * the ages of both girls at the time [of] the alleged [abuse] * * * were similar (both being young girls above toddler age and below adolescence); * * * both girls had a family relationship with [the] defendant; * * * and * * * both had had unsupervised contact with [the] defendant in his * * * residence." *Id.*

---

[16] While the trial justice instructed the jury on motive, opportunity, intent, preparation, and plan, we focus only on what we perceive to be the most pertinent exception—plan. *See Sobanski v. Donahue*, 792 A.2d 57, 58-59 (R.I. 2002) ("Although on appeal this Court will consider only those issues that have been raised before the trial court, in rendering our decisions we are free to decide the case on grounds other than those relied upon by the lower-court judge.").

[17] We appreciate that Beth's testimony is not admissible under the Rule 404(b) exception of "lewd disposition" because Beth is not the complaining witness in the case. *See State v. Dubois*, 36 A.3d 191, 201 (R.I. 2012).

Moreover, the Rule 404(b) witness there testified to abuse that occurred between 1994 and 1998 (eight to twelve years prior to trial), while the complaining witness testified to abuse between 2001 and 2004 (two to five years prior to trial). *Merida*, 960 A.2d at 230, 231, 232.

The similarities between that case and the present one lead us to determine that the trial justice did not abuse his discretion in finding the "common scheme or plan" exception applicable here.[18] *See Merida*, 960 A.2d at 232. Both Anna and Beth allege that defendant attempted to penetrate them, although he was unsuccessful with Beth due to her resistance. Moreover, Anna and Beth were approximately the same age when the abuse began, each viewed defendant as a father figure (whether biological or otherwise), and both were left alone with defendant. Considered together, Anna's and Beth's testimony have at least the same amount of similarities as the accounts in *Merida*. *Id.*; *see also Mohapatra*, 880 A.2d at 808 (holding that the trial justice acted within his discretion by admitting evidence as Rule 404(b) "common scheme or plan" exception where defendant sexually assaulted two family friends in a similar manner); *see also State v. Cardoza*, 465 A.2d 200, 203 (R.I. 1983) (affirming the trial justice's finding that the Rule 404(b) evidence "was part of [the] defendant's continuing behavioral pattern of sexually abusing his stepdaughters within the same time period").

Furthermore, it is of no consequence that Beth's alleged abuse occurred fifteen years after the charged crime. Rule 404(b) and its exceptions refer only to "other" crimes, without distinguishing between previous and subsequent crimes, and we will not read such language into that rule today.

---

[18] While the trial justice did not specifically reference "common scheme or plan," he did acknowledge the "plan" exception, and we remark that "common scheme or plan" and "plan" have been used interchangeably. *See State v. Hopkins*, 698 A.2d 183, 186 (R.I. 1997).

Therefore, the trial justice did not abuse his discretion in determining that the evidence fit within a Rule 404(b) exception.

### c. Relevance and Reasonable Necessity

Next, to be admissible under Rule 404(b), "the evidence must [also] be 'relevant' to the crime charged and 'reasonably necessary.'" *Coningford*, 901 A.2d at 628-29 (quoting *Jalette*, 119 R.I. at 627, 382 A.2d at 533).

### 1. Relevance

We have previously articulated that "Rule 401 of the Rhode Island Rules of Evidence defines 'relevant evidence' as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Perez*, 161 A.3d 487, 497 (R.I. 2017). Also significant to our analysis, "Rule 402 of the Rhode Island Rules of Evidence indicates that '[a]ll relevant evidence is admissible.'" *Perez*, 161 A.3d at 497. Thus, "the relevancy bar * * * is quite low." *Id.*

Beth's testimony "was indicative of '[the] defendant's lecherous conduct toward' * * * [girls] 'over whom he exercised discipline, control, and supervision.'" *Perez*, 161 A.3d at 497 (quoting *Pignolet*, 465 A.2d at 182). Despite defendant's urging otherwise, we do not quibble with the trial justice's declaration that "[t]he [c]ourt finds that this is relevant in light of the high burden of proof to the [s]tate and in light of the fact that the only witness's testimony in this particular case with regard to what happened is [Anna] herself * * *." The trial justice did not allow Beth's testimony to bolster Anna's testimony, as defendant suggests, but rather to show a larger pattern of behavior adverse to young girls, demonstrating a plan. *See id.* Thus, the trial justice did not abuse his discretion in concluding that Beth's testimony was in fact relevant.

## 2. Reasonable Necessity

As for whether Beth's testimony was "reasonably necessary," "[w]hen charges of sexual abuse hinge upon a credibility contest between [the] defendant and child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony." *Mohapatra*, 880 A.2d at 808. Although Anna alleges abuse that occurred when she was a child, she testified when she was thirty-four years old. Therefore, we will not extend to Anna the same latitude we do to child complainants. Still, even without such latitude, we conclude that the trial justice did not abuse his discretion in determining that Beth's testimony was "reasonably necessary" under Rule 404(b).

In *Cavanaugh*, 158 A.3d at 280, we addressed the reasonable necessity of Rule 404(b) testimony of a sexual assault other than the one for which the defendant was on trial. There, we analogized *Mohapatra*, recalling how we recognized in that case "that prior incidents of sexual assault are reasonably necessary to the state's case when the victim's credibility is placed at issue." *Cavanaugh*, 158 A.3d at 280. We continued that:

> "We are cognizant that this is a case in which the evidence revealed a crime committed in private with a *significant lapse of time* between the sexual assaults and the prosecution. The credibility of the complainant was placed at *center stage*. We therefore are persuaded that this evidence meets the test of relevancy and necessity to the state's case. It is not cumulative." *Id*. (emphasis added).

Such a sentiment is applicable to the present case. The abuse of Anna occurred more than two decades ago. *See Perez*, 161 A.3d at 497 ("In this case, there was no physical evidence or third-party eyewitness testimony presented at trial."). The trial justice recognized that "the only witness's testimony in this particular case with regard to what happened is [Anna] herself." Because it is defendant's contention that no abuse occurred, there is in effect a "credibility

- 21 -

contest" between the two.  *See, e.g.*, *id.* (holding that Rule 404(b) testimony was reasonably necessary where it turned on the complainant's testimony, which the defendant attacked).

Anna's credibility, then, is at "center stage," and Beth's testimony corroborates Anna's rendition that defendant engaged in a pattern of sexual abuse of girls to whom he was a father figure.  *See Hopkins*, 698 A.2d at 187 (concluding that the trial justice did not abuse his discretion where he held Rule 404(b) was "reasonably necessary" to "prove the prosecution's case, which largely turned on a credibility battle").  The reasonable necessity of Beth's testimony was further heightened by the length of time that had passed since defendant was alleged to have assaulted Anna.  We conclude, therefore, that the trial justice did not abuse his discretion in determining that Beth's testimony was reasonably necessary to the state's case.  *But see State v. Haslam*, 663 A.2d 902, 912 (R.I. 1995) (determining that the trial justice improperly instructed the jury that Rule 404(b) evidence was relevant solely on the issue of credibility).[19]

### d.  Limiting Instruction

We briefly address the final requirement under a Rule 404(b) analysis:  that "when such evidence is admitted, the trial justice must instruct the jury on the limited purpose for which the evidence may be considered."  *Merida*, 960 A.2d at 239.  The trial justice acknowledged that he must give a limiting instruction; and, in relaying that instruction to the jury, he said:

---

[19] The defendant emphasizes that it only "dawned on" the prosecution the night before trial to call Beth to the stand.  Conversely, before the trial justice, the state characterized Beth as "not a last-minute witness, but a witness the [s]tate felt was not prepared to go to any type of hearing against [defendant] * * * it is not a last-minute issue that has come up in the factual outline of this case."  Based on the state's submission that it did not proceed to trial without Beth's testimony by its own choosing, defendant's characterization of Beth's testimony does not convince us that it was not of reasonable necessity.  Had Beth offered to testify at trial and the state declined, our determination today might be different.  But because that is not the situation presented before us now, we do not disturb the trial justice's finding that Beth's testimony was reasonably necessary to the state's case.

"Ladies and gentlemen, you're about to hear some testimony about some conduct [with] which * * * [d]efendant is not charged. He is not on trial for this conduct in this particular trial, and if you consider this testimony at all - - and the decision to consider the testimony is solely one of the jurors' prerogative - - but you may consider the testimony only as it relates to * * * [d]efendant's motive, his opportunity, his intent, preparation, his plan as it relates to the testimony given to you by [Anna] last week. You may consider this testimony for no other purpose other than that limited ability to consider it for the reasons I just gave you. The [d]efendant is not on trial at this time in this case for this particular conduct."

Because the trial justice used language derived directly from Rule 404(b) to instruct the jury, and because we presume that the jury heeded that instruction, we believe his limiting instruction was sufficient. *See Mazzaro v. Narragansett Improvement Co.*, 109 R.I. 244, 250, 283 A.2d 887, 891 (1971) (acknowledging the assumption that a jury follows instructions given by the trial justice).

Therefore, having reviewed all of the Rule 404(b) requirements and being satisfied that each was met, we hold that the trial justice did not abuse his discretion in allowing Beth's testimony.

## C. Rule 403

### 1. Standard of Review

Before addressing defendant's argument concerning Rule 403 of the Rhode Island Rules of Evidence, we repeat that "[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent." *Mohapatra*, 880 A.2d at 805 (quoting *State v. Grayhurst*, 852 A.2d 491, 504 (R.I. 2004)).

### 2. Analysis

A trial justice's analysis of Rule 403 "requires [him or her] to not only examine the evidence in the context of the case on trial, but to balance the evidence to determine whether its

probative force 'is substantially outweighed by the danger of unfair prejudice * * *.'" *Cavanaugh*, 158 A.3d at 281 (quoting *State v. Patel*, 949 A.2d 401, 413 (R.I. 2008) and Rule 403). The defendant argues that the unfair prejudice of Beth's testimony clearly outweighs any probative value, especially because it involves a victim other than the complaining witness in the case. He submits that Beth's testimony was cumulative, as well as irrelevant, because it described attempted penetration (as opposed to successful penetration) and also elucidated his attempt to bind her, which Anna did not allege occurred with her. The trial justice acknowledged that there was "cumulative effect," but nonetheless concluded that Beth's testimony goes to "motive, intent, opportunity, and plan." In ruling, the trial justice emphasized that he "understand[s] there is a large segment of prejudice, but [Beth's testimony] is enormously relevant."

The defendant relies on *State v. Gaspar*, 982 A.2d 140 (R.I. 2009), to support his argument that the trial justice should have excluded Beth's testimony under Rule 403, but that case is distinguishable. In *Gaspar*, the trial justice allowed testimony of a prior consensual sexual relationship with the defendant involving rough or aggressive, but nonetheless largely consensual, sex, under Rule 404(b). *Gaspar*, 982 A.2d at 149. We held that the introduction of that defendant's "consensual and alleged nonconsensual sexual encounters * * * was very likely to confuse the jury and invite an emotional response." *Id.* While we agree that Beth's testimony was sure to invoke an emotional response where she alleged sexual abuse by defendant, her biological father, we nonetheless agree with the trial justice that the emotional response did not amount to unfair prejudice outweighing its probative value. Unfair prejudice does not arise solely because defendant is Beth's biological father; in fact, defendant's relationship to Beth makes her testimony only more relevant in that the familial relationship falls within his pattern of

abuse. *See Hopkins*, 698 A.2d at 186 (holding that the alleged remoteness of Rule 404(b) evidence was outweighed by potential probative value of victims of a similar age and relationship to the defendant, constituting "a modus operandi that bore [the defendant's] signature" (quoting *State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993))).

Moreover, in *Hopkins*, 698 A.2d at 186, we acknowledged that the remoteness of evidence is a proper consideration for its potential probative value. In so weighing the remoteness of Beth's testimony under Rule 403, we believe that the trial justice did not abuse his discretion in determining that it did not diminish the testimony's probative value in comparison to its unfair prejudice. As we accepted above, Beth's testimony describes a sexual assault against a victim of the same age and gender, a similar familial relationship, and in largely the same manner as the sexual assault against Anna. The age of Anna and Beth is particularly relevant because both girls were approximately the same age when the alleged abuse occurred; the implication that defendant had a predilection for girls of this age—evidenced by Beth's testimony that defendant abused her at the same age as he did Anna—is enormously relevant to his common scheme or plan of abusing young girls. Thus, we agree that the length of time that separates the two assaults is substantially outweighed by the probative value exemplified through the similarities between Anna and Beth's accounts.

Accordingly, we conclude that the trial justice did not abuse his discretion in admitting this evidence under Rule 403.

### D. Motion for New Trial

### 1. Standard of Review

A motion for new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure requires the trial justice to place "himself or herself in the role of a 'thirteenth juror'

and then exercise[] his or her independent judgment as to the credibility of the witnesses and the weight of the evidence." *State v. Grantley*, 149 A.3d 124, 131 (R.I. 2016) (quoting *State v. Matthews*, 111 A.3d 390, 398 (R.I. 2015)). In doing so, the trial justice then "must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and * * * (3) determine whether he or she would have reached a result different from that reached by the jury." *Id.* (quoting *Matthews*, 111 A.3d at 398). In our review of a trial justice's decision as to a motion for new trial "[w]e accord great deference * * * 'because a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses.'" *State v. Whitaker*, 79 A.3d 795, 804 (R.I. 2013) (quoting *State v. Rosario*, 35 A.3d 938, 948 (R.I. 2012)). Therefore, "[w]e 'will not overturn a trial justice's ruling on a motion for * * * new trial unless he was clearly wrong or overlooked or misconceived material and relevant evidence that related to a critical issue in the case.'" *Id.* at 803 (quoting *State v. St. Michel*, 37 A.3d 95, 102 (R.I. 2012)).

### 2. Analysis

The defendant argues that the trial justice erred in denying his motion for new trial where the trial justice overlooked inconsistencies pertaining to Anna's trial testimony and her grand jury testimony, her testimony at defendant's bail hearing, and her statements to the police. The defendant points to numerous examples. Regarding the Manton Avenue incident, he cites Anna's inconsistencies as to (1) the clothing she wore at the time of the abuse; (2) her exchange of words with defendant during the incident; (3) its duration; (4) whether defendant ejaculated during the abuse; and (5) the dynamic of her and defendant's relationship after the abuse. In relation to the Sterling Avenue incident, defendant discusses Anna's inconsistences as to (1) how it began; (2) her statements during it; and (3) defendant's statements during the encounter. The

defendant specifically takes issue with Anna's inconsistent statement as to whether defendant ejaculated during the Manton Avenue incident, arguing that "[e]jaculation is not the type of minor detail that a complaining witness might waver on; this was integral to the sexual assault itself." Finally, defendant raises concern with the trial justice's acceptance of Anna's reason for her delayed disclosure of the abuse, as well as the trial justice's characterization of Beth's testimony.

In denying defendant's motion for new trial, the trial justice commented that the defense's cross-examination of Anna "was excellent with regard to every inconsistency." Acknowledging Anna's inconsistencies, the trial justice explained that "[t]here were a number of inconsistencies, and every single one, the defense counsel was able to bring out. * * * For the most part, not a hundred percent, but for the most part [Anna] didn't even attempt to offer an explanation, except one time * * *." He determined that Anna was "a credible witness, notwithstanding all the inconsistencies. The main thrust of her testimony, that she was molested on the occasions as described in the indictment, [was] consistent."

We have stated that "inconsistencies in a witness's testimony do not 'preclude a determination that the witness[] w[as] credible.'" *State v. Diaz*, 159 A.3d 1053, 1064 (R.I. 2017) (quoting *State v. Lopez*, 129 A.3d 77, 85 (R.I. 2016)). Moreover, while Anna's testimony did contain disparities, "they reflect no more than minor details." *State v. Moore*, 154 A.3d 472, 483 (R.I. 2017), *cert. denied*, No. 16-9373, 2017 WL 2342727 (U.S. Oct. 2, 2017); *see Rosario*, 35 A.3d at 948 (affirming the trial justice's decision where he emphasized that "[e]ven if there were inconsistencies, the thrust or the nub of the testimony was clearly consistent, in my mind, clearly believable"). Further, we reject defendant's contention that Anna's inconsistent statements regarding defendant's ejaculation during the Manton Avenue incident concerns a detail "integral

to the sexual assault itself." Ejaculation is not required for a conviction of first-degree child molestation. *See State v. Pablo*, 925 A.2d 894, 901 (R.I. 2007) ("absence of seminal fluid certainly is not mutually exclusive with an act of penetration"). As such, the trial justice was well within his discretion to deny defendant's motion for new trial.

The defendant next argues that Anna's delayed disclosure substantially undermined her credibility and that the trial justice was clearly wrong in accepting her reason for the delay. At the motion for new-trial hearing, the trial justice recounted that:

> "This was a young lady, * * * eight-years old at the time this happened. And the dynamics of what occurred between [Anna] and her mother * * * was such that the only person - - the Court draws an inference, the only individual that [Anna] could have relied on for safety and protection failed to live up to that role as a mother in the case. The Court is reasonably satisfied that [Anna] may have been reluctant to go to her grandfather to make these kinds of disclosures."

Giving the trial justice his due "great deference," we cannot say that he was clearly wrong in accepting Anna's reasoning for her reluctance to disclose defendant's abuse. *See Whitaker*, 79 A.3d at 804.

Last, defendant argues that the trial justice improperly considered Beth's testimony as evidence of defendant's bad character. The defendant points to two statements the trial justice made regarding Beth's testimony:

> "The [c]ourt also had an opportunity to consider [defense counsel's] motion to suppress all references to any other convictions for which [defendant] had been convicted of. * * * Those convictions pale in comparison. They don't go to his honesty or his integrity, and they pale in comparison to the [Rule] 404(b) evidence which the [c]ourt allowed."

The second statement defendant references reads: "And any inferences the jury could have drawn as to [defendant's] ability to stay of good behavior and follow the law and keep his

conduct in conformance with the law certainly paled when one considers those convictions in light of * * *, or standing next to[,] the [Rule] 404(b) evidence."

We are unpersuaded by defendant's argument that, in making these two statements, the trial justice misconceived law and fact. At the motion for new-trial hearing, the trial justice explicitly stated the purpose for which he allowed Beth's testimony—"as proof of motive, opportunity, intent, preparation, plan, knowledge, identity[,] or the absence of mistake or accident." The statements that defendant isolates do not show that the trial justice considered Beth's testimony for any purpose other than those on which he instructed the jury.

Therefore, we conclude that the trial justice neither clearly erred, nor did he overlook or misconceive material evidence in analyzing defendant's motion for new trial.

### E. Motion for Judgment of Acquittal

#### 1. Standard of Review

When addressing a motion for judgment of acquittal, this Court and the trial justice both "weigh the evidence in the light most favorable to the prosecution, give full credibility to the prosecution's witness, and draw from the evidence every reasonable inference consistent with guilt." *Darcy*, 442 A.2d at 901. The motion "may be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." *State v. Lynch*, 19 A.3d 51, 56 (R.I. 2011).

#### 2. Analysis

The defendant argues that the trial justice erred in denying his motion for judgment of acquittal as to the first two counts of the indictment, each charging first-degree child molestation. Specifically, count 1 charged that defendant engaged in penile/vaginal penetration with Anna sometime between October 1, 1987, and August 22, 1988; and count 2 charged that he engaged

in penile/vaginal penetration with Anna on a date between January 1, 1990, and December 31, 1990.  The defendant maintains that the conduct he engaged in did not amount to penetration as defined by statute.

"A person is guilty of first[-]degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."  Section 11-37-8.1. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, *however slight*, by any part of a person's body or by any object into the genital or anal openings of another person's body, or the victim's own body upon the accused's instruction, but emission of semen is not required."  Section 11-37-1(8) (emphasis added).  In light of this definition, we analyze defendant's argument as to each count.

### 1.  Count 1

The Manton Avenue incident formed the basis for count 1.  At trial, Anna testified that, as she sat on the couch and watched television, defendant asked her if she wanted to do something fun.  She recalled agreeing, resulting in defendant laying her on the couch and moving on top of her.  Removing both of their pants, he straddled her.  Her testimony proceeded as follows:

> "Q: What happened next?
> "A: He proceeded to lay down on top of me.
> "Q: When he laid down on top of you, what part of his body was
> — strike that. Was any part of his body touching your body?
> "A: His penis was rubbing up against my vagina.
> * * *
> "Q: So when you say his penis was rubbing up against you, did it
> at some point go inside of you?
> "A: Technically, yes.
> "Q: When you say, 'technically, yes,' what do you mean?
> "A: It was explained to me that even if it was on my labia it was
> still ——
> "[Defense Counsel]: Objection.
> "THE COURT: Sustained.

- 30 -

"Q: Did you feel his penis inside of you?
"A: Yes.
* * *
"Q: When you say inside of you, what part of your body was his penis in?
"A: My labia.
"Q: Which is what part of your body?
"A: Vagina.
"Q: Do you know how long it lasted?
"A: About thirty seconds.
* * *
"Q: But for that [thirty] seconds, you felt his penis in your vagina?
"A: Yes.
* * *
"Q: The act of penetration happened for about [thirty] seconds. How long do you think the entire act happened?
"A: Total, about two minutes."

The defendant's contention that Anna's testimony was tainted by her statement that "technically" defendant's penis was in her "labia," which she thereafter testified meant her vagina, is unconvincing. In his brief, defendant concedes that "had [Anna's] testimony been clear regarding intrusion into the labia, it would have been sufficient to establish intrusion into a genital area, and thus, sexual penetration." Based on the entire colloquy between Anna and the prosecutor, we are satisfied that Anna's testimony as to the Manton Avenue incident shows that defendant vaginally penetrated her. Even if initially unclear, Anna affirmatively agreed with the prosecutor three times when questioned about when defendant was "inside" her. *But see In the Matter of B.H.*, 138 A.3d 774, 782 (R.I. 2016) (holding that the use of the word "butt" was too imprecise and vague to convey whether there was an intrusion, however slight, into the anal opening of each complainant).

Anna's testimony, in light of her clarification, was sufficiently "precise" and "specific" to prove penetration beyond a reasonable doubt.[20] *See State v. McDonald*, 602 A.2d 923, 924, 925 (R.I. 1992) (requiring "precise and specific testimony" to prove the "serious allegation" of first-degree sexual penetration). Accordingly, viewing Anna's testimony in the light most favorable to the prosecution, there was sufficient evidence of defendant's guilt beyond a reasonable doubt as to count 1. *See Lynch*, 19 A.3d at 56.

## 2. Count 2

The defendant also alleges that the trial justice erred in denying his motion for judgment of acquittal as to the Sterling Avenue incident, which formed the basis for count 2. Anna testified at trial that, while living at Sterling Avenue when she was eleven years old, defendant again sexually assaulted her. She testified that, when she visited defendant at his apartment, defendant pushed her onto the bed, undressed her, and took off his pants before lying on top of her. Anna testified as follows:

> "Q: When he is on top of you, what does he do next?
> "A: He attempts to have intercourse with me.
> "Q: When you say 'attempts to have intercourse' with you, what do you mean?
> "A: He proceeded to put his penis into my vagina again.
> "Q: And you felt his penis in your vagina?
> "A: Yes.
> * * *
> "Q: So his penis goes into your vagina, how long do you think that lasts?
> "A: I can't —— I can't answer.
> "Q: But you felt it inside of you?
> "A: Yes.
> "Q: And this time you have no clothes on, he has no clothes on?

---

[20] Because we are satisfied that there was sufficient evidence in light of our conclusion that Anna's statement that "technically" defendant was inside her did not taint the remainder of her testimony, we need not address defendant's assertion that "touching of external female genitalia—'on' the labia, as [Anna] initially testified—is not sexual intercourse or an intrusion, however slight, into a genital opening."

"A: Correct.

"Q: What happens after —— strike that. Does he eventually take
his penis out of your vagina?

"A: Yes."

The defendant takes issue with Anna's assertion that defendant "attempt[ed] to have intercourse" with her, which he argues does not sufficiently prove penetration. If her testimony had stopped there, we would be inclined to agree. However, after making that statement, Anna immediately clarified that, by "attempt to have intercourse," she meant that he "proceeded to put his penis into [her] vagina again." Anna's subsequent clarification was "precise" and "specific" as to vaginal penetration; and, viewing the evidence in the light most favorable to the prosecution, it was adequate to prove penetration beyond a reasonable doubt. *See McDonald*, 602 A.2d at 925.

The trial justice, therefore, did not err in denying the defendant's motion for judgment of acquittal on counts 1 and 2.

## III

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

**Justice Flaherty, with whom Justice Robinson joins, dissenting.**

"In a very real sense a defendant starts his life afresh when he
stands before a jury, a prisoner at the bar." *People v. Zackowitz*,
172 N.E. 466, 468 (N.Y. 1930) (Cardozo, C.J.).

I respectfully dissent from the holding of the majority in this case. I do so because I conclude that the testimony of Beth was not properly admitted under Rule 404(b) of the Rhode Island Rules of Evidence. To be sure, our jurisprudence has deemed the admission of other-bad-

acts evidence to be a flexible concept. But it is my opinion that, in this case, the elasticity of the rule has been stretched beyond the breaking point.

We have in this jurisdiction a well-established body of case law with respect to the admissibility of 404(b) evidence of a defendant's sexual offenses against a person other than the complaining witness. For such evidence to be properly admitted, we have said, time and time again, that it must be (1) nonremote and similar to the charged conduct; (2) admitted only to prove a Rule 404(b) exception that is relevant to proving the crime charged; and (3) reasonably necessary to prove the crime charged. *See State v. Cavanaugh*, 158 A.3d 268, 280 (R.I. 2017); *State v. Mitchell*, 80 A.3d 19, 28-29 (R.I. 2013); *State v. Merida*, 960 A.2d 228, 237, 239 (R.I. 2008); *State v. Coningford*, 901 A.2d 623, 627 (R.I. 2006); *State v. Mohapatra*, 880 A.2d 802, 806 (R.I. 2005); *State v. Hopkins*, 698 A.2d 183, 185-87 (R.I. 1997); *State v. Davis*, 670 A.2d 786, 789, 790, 791 (R.I. 1996); *State v. Cardoza*, 465 A.2d 200, 204 (R.I. 1983); *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978).[1] In my opinion, Beth's testimony falls short in all three respects. I will address each in turn.

---

[1] To be clear, these cases do not include those relying on the so-called "lewd-disposition" exception to Rule 404(b) of the Rhode Island Rules of Evidence. *See State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978) (adopting the holding that "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's 'lewd disposition or * * * intent' towards the person"). It is important to note that the lewd-disposition exception is applicable to 404(b) evidence of uncharged sexual acts against only the complainant, not another victim. *See State v. Mitchell*, 80 A.3d 19, 29 n.8 (R.I. 2013); *State v. Coningford*, 901 A.2d 623, 627 n.5 (R.I. 2006); *State v. Mohapatra*, 880 A.2d 802, 806 n.4 (R.I. 2005). In *State v. Pignolet*, 465 A.2d 176 (R.I. 1983), this Court extended the lewd-disposition exception solely to admit the "testimony of siblings of tender years" where the "similar but uncharged sexual conduct [was] closely related in time, place, age, and family relationships of victims [and] where it was relevant, material, and highly probative of an accused's lecherous conduct toward the victims over whom the defendant exercised discipline, control, and supervision." *State v. Bernier*, 491 A.2d 1000, 1004-05 (R.I. 1985) (clarifying the "very narrow" holding in *Pignolet*); *see Pignolet*, 465 A.2d at 181-82. In fact, we later said that

**1**

**Nonremote and Similar**

It is well-settled law that, for purposes of Rule 404(b), sexual "[o]ffenses will be considered sufficiently 'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, and the form of the sexual acts.'" *Mohapatra*, 880 A.2d at 806 (quoting *State v. Brigham*, 638 A.2d 1043, 1045 (R.I. 1994)). My quarrel here is with the temporal factor.[2] I cannot agree that the incidents to which Anna and Beth testified are "closely related in time" whatsoever. *Id.* (quoting *Brigham*, 638 A.2d at 1045).

---

> "*Pignolet* represented the extreme beyond which we are unwilling to extend the other-crimes (or bad-acts) exception because of its overwhelming prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged." *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I. 1996).

I find it noteworthy that the author of the *Jalette* opinion vigorously dissented in *Pignolet*, decrying, "the rationale that led to *Jalette* has been laid to its eternal rest without benefit of so much as a eulogy." *Pignolet*, 465 A.2d at 184 (Kelleher, J., joined by Bevilacqua, C.J., dissenting); *see also Quattrocchi*, 681 A.2d at 886 (stating that "[t]here is no question that *Pignolet* expanded the *Jalette* doctrine insofar as it related to two stepdaughters in the same household but went beyond the narrow exceptions set forth in *Jalette*").

Nonetheless, the majority has seemingly relied on the lewd-disposition exception in explaining how Beth's testimony was relevant to proving the crime that defendant was charged with committing against Anna. The majority, quoting prior case law, writes in its opinion that Beth's testimony "was indicative of '[the] defendant's lecherous conduct toward' * * * [girls] 'over whom he exercised discipline, control, and supervision.'" *State v. Perez*, 161 A.3d 487, 497 (R.I. 2017) (quoting *Pignolet*, 465 A.2d at 182). Again, the "very narrow" (*Bernier*, 491 A.2d at 1004) holding in *Pignolet* only "expanded the *Jalette* doctrine insofar as it related to two stepdaughters in the same household[,]" and it "represented the extreme beyond which we are unwilling to extend the other-crimes (or bad-acts) exception * * *." *Quattrocchi*, 681 A.2d at 886.

[2] I do not disagree that the Manton Avenue and Sterling Avenue incidents involving Anna and the incident that Beth described are similar. But I am of the opinion that nonremoteness and similarity are distinct inquiries, as discussed *infra*.

To be sure, this Court previously has approved the admission of evidence of uncharged sexual offenses against victims other than the complainants, even though the misdeeds were several years removed from the charged crimes. *See Merida*, 960 A.2d at 230-31, 232, 239 (six years at shortest interval, ten years at longest); *Coningford*, 901 A.2d at 628 (seven and eleven years, respectively, for two victims); *Hopkins*, 698 A.2d at 186 (ten years); *Davis*, 670 A.2d at 790 (nine years).[3] "However, there is a point beyond which such remoteness may not go." *State v. Schlak*, 111 N.W.2d 289, 292 (Iowa 1961) (holding five years too remote). I believe this case has passed that point, and I believe, respectfully, that with this holding, the Court has written the temporal aspect of Rule 404(b) jurisprudence out of the law.

Count 1 charged defendant with first-degree child molestation that occurred sometime at the end of 1987 or the beginning of 1988. That charge involved defendant's laying eight-year-old Anna, his girlfriend's daughter with whom he lived, flat on the couch; climbing on top of her; straddling her; removing her pants and underwear; rubbing his penis against her vagina; and penetrating her labia. Count 2 charged defendant with first-degree child molestation at some point in 1990. That charge alleged that defendant forcefully pushed Anna onto his bed, completely undressed her, lay fully on top of her, with his legs between hers, and penetrated her vagina. Count 3 charged defendant with second-degree child molestation sometime between April 1, 1992 and August 30, 1992. That charge alleged that defendant grabbed Anna's breast.

---

[3] Again, I cite no cases relying on the lewd-disposition exception. This is so because, in a given case where the Rule 404(b) testimony concerns the complaining witness, I may feel it appropriate to analyze the remoteness factor differently than I do in this case. For instance, in *State v. Toole*, 640 A.2d 965 (R.I. 1994), the defendant challenged the admission of the child complainant's testimony of uncharged offenses committed against her by the defendant seven to eleven years prior to the charged offenses. *Id.* at 969. There, because the evidence that the defendant had molested his biological daughter beginning when she was four years old was permitted for the purpose of showing his lewd disposition toward that particular girl throughout her childhood, *id.* at 971, I would agree that its admission was proper in that case notwithstanding that, at first blush, eleven years seems remote in the plainest sense of the word.

As evidence that defendant committed these crimes against Anna, Beth was permitted to testify to a sexual assault that defendant, her biological father whom she rarely saw, attempted in 2003, when she was eight years old. Beth said that, as she sat on the edge of defendant's bed in his single-room apartment, defendant pushed her back on the bed and began taking his and her clothes off; all the while, Beth was struggling to get up. According to Beth, defendant climbed on top of her, and, because she was trying to push him away, he wrapped her arms in his belt and put them above her head. He then put his arms and legs on either side of Beth, straddling her. Beth testified that defendant tried to put his penis in her vagina. According to Beth, his penis actually touched her vagina, but because of her kicking him away as she struggled to get up, he was unsuccessful in his efforts to penetrate her.

Beth's testimony alleging prior acts by defendant could be considered similar to the charges set out in counts 1 and 2, which predate the 404(b) evidence by fifteen years and thirteen years, respectively.[4] Whether we use fifteen or thirteen years as the operative period for analyzing the remoteness of the 404(b) evidence in this case, the amount of time that passed here is simply too great to be considered nonremote under any commonsense definition of the word. There was no indication that the charges involving Anna and the incident about which Beth testified were part of some continuing course of conduct by defendant; rather, as they appeared at trial, they were completely isolated incidents. *See Tyson v. State*, 503 S.E.2d 640, 641 (Ga. Ct. App. 1998); *State v. Ray*, 882 P.2d 1013, 1015-16 (Mont. 1994); *State v. Jones*, 369 S.E.2d 822, 824 (N.C. 1988); *State v. Chapman*, 168 N.E.2d 14, 16 (Ohio Ct. App. 1959); *see also Commonwealth v. Hanlon*, 694 N.E.2d 358, 367 (Mass. App. Ct. 1998) (allowing subsequent

---

[4] Count 3, which bears no resemblance at all to the incident Beth described, involved an incident which occurred eleven years earlier. I acknowledge that the interval between count 3 and the 404(b) evidence is one this Court has affirmed in the past. *See Coningford*, 901 A.2d at 628.

"evidence that the defendant was abusing altar boys from his own parish *almost continually* over a decade * * * because it demonstrates the ongoing nature of [his] behavior" (emphasis added)).

Of course, as the majority notes, "[r]emoteness is relative, depending upon the circumstances and the conduct in question." *State v. Pignolet*, 465 A.2d 176, 181 (R.I. 1983). Therefore, I by no means suggest imposing a bright-line temporal cutoff when it comes to analyzing remoteness for purposes of Rule 404(b). *See Ray*, 882 P.2d at 1016 (declining to set arbitrary time limits for admitting prior-acts evidence). "It is, however, never to be lost sight of that the defendant is entitled to be tried upon competent evidence and *only for the offense charged * * *.*" *Hall v. United States*, 235 F. 869, 870 (9th Cir. 1916) (emphasis added); *see also id.* at 871 (holding that evidence of assault on another victim three years earlier was too remote); *State v. Nicks*, 332 P.2d 904, 904, 906 (Mont. 1958) (holding that similar crimes in another state four years earlier were too remote); *State v. Moubray*, 81 S.E.2d 117, 122 (W. Va. 1954) (holding that the last prior bad act which "occurred more than three years before the commission of the specific offense charged" was too remote). In my opinion, the event Beth described was simply too far removed in time to be used as evidence against defendant in *this* trial on *these* charges, and it should have been excluded.

The Court today recasts the rule to the extent that, as long as the 404(b) evidence is sufficiently similar to the charged conduct, it need not be sufficiently nonremote. The majority rationalizes this conclusion by saying that temporal relation is but one of many factors to be considered. *See Mohapatra*, 880 A.2d at 806 (holding that, for purposes of Rule 404(b), sexual "[o]ffenses will be considered sufficiently 'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, and the form of the sexual acts'" (quoting *Brigham*, 638 A.2d at 1045)). It is my view, however, that the nonremoteness and

- 38 -

similarity inquiries should not be conflated. Of the five factors set forth in *Mohapatra*, 880 A.2d at 806, four address similarities and one squarely addresses temporal proximity. I fail to see how satisfaction of some of those factors obviates the need for satisfaction of the others. If the majority's reasoning is correct, then we have effectively eliminated the requirement that 404(b) evidence of sexual offenses must be "closely related in time," *id.* (quoting *Brigham*, 638 A.2d at 1045), as that language now has been rendered utterly meaningless.

**2**

**Relevant Rule 404(b) Exception**

Rule 404(b) permits evidence of a defendant's other crimes, wrongs, or acts to be admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[5] Although there has been flexibility in the interpretation of the rule, it is beyond dispute that the rule bars such evidence when offered to prove the defendant's character in order to show that he acted in conformity therewith.[6] Accordingly, "[i]n molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'" *Mohapatra*, 880 A.2d at 806 (quoting *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I. 1996)). Thus, for Beth's testimony to have been properly admitted, it must have been

---

[5] Although we have recognized that the list of exceptions set forth in the second sentence of Rule 404(b) is not exhaustive, *see State v. Cavanaugh*, 158 A.3d 268, 280 (R.I. 2017), none of the other exceptions which have been developed through our case law could possibly apply in this case. *See, e.g.*, *State v. Pona*, 948 A.2d 941, 950 (R.I. 2008) (evidence also admissible when other crimes, wrongs, or acts "are interwoven or in instances when introduction is necessary for 'a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence'" (quoting *State v. Gomes*, 690 A.2d 310, 316 (R.I. 1997))); *Jalette*, 119 R.I. at 627, 382 A.2d at 533 (adopting the lewd-disposition exception).

[6] This is precisely the reason why those permissible purposes outlined in Rule 404(b) are widely recognized as "exceptions" to the character evidence rule.

offered to prove one of the aforementioned permissible Rule 404(b) exceptions, and that exception must also have been relevant to proving the charges against defendant. And, importantly, it remains our law that "any doubt as to the relevancy of such evidence should be resolved in favor of the accused." *Jalette*, 119 R.I. at 627, 382 A.2d at 533.

The majority shoehorns Beth's testimony into the plan exception under Rule 404(b). I cannot agree. As I have addressed earlier in this dissent, the earlier charges concerning Anna and the later incident that involved Beth were separated by well over a decade and were completely unconnected incidents in the context of the evidence presented at trial. There was no demonstration by the state that the later sexual misconduct was "part and parcel" of a common scheme or plan by defendant, or that the subsequent act and the charges were "linked as integral components of * * * defendant's common purpose or plan to commit the current charge[s,]" *State v. Aakre*, 46 P.3d 648, 655 (Mont. 2002), so I can reach no other conclusion than that the plan exception under Rule 404(b) is wholly inapplicable to Beth's testimony. "Th[is] random and remote act[] [in 2003 was] not relevant in establishing that [defendant] acted according to an explicit and premeditated plan in [1988 and 1990]." *Commonwealth v. Bradley*, 364 A.2d 944, 946-47 (Pa. Super. Ct. 1976) (other bad acts occurred almost three years after the crime charged).

Yet, the majority reasons that evidence of defendant's molestation of Beth was admissible to prove his "plan," thirteen to fifteen years earlier, to commit first-degree child molestation against Anna. Ironically, the plan exception under Rule 404(b) is the one most closely related to the threshold remoteness inquiry. *See Aakre*, 46 P.3d at 654 ("Indeed, for Rule 404(b) purposes we conclude that proof of mere similarity of crimes is insufficient, on a stand alone basis, to demonstrate a 'common purpose or plan that results in the repeated commission of

- 40 -

the same offense.'  Rather, application of this definition of common scheme also requires showing that the crimes occurred within a time frame that supports the conclusion that the similar offenses were committed to achieve a common purpose or plan related to the commission of the current charge."); *State v. Winter*, 648 A.2d 624, 629 (Vt. 1994) ("[T]emporal proximity is a prerequisite to admission in plan or scheme cases.").  In that sense, the majority now approves of a thirteen- to fifteen-year interval as both nonremote *and* part of a common plan.  I am unable to concur with such a holding.

In essence, the Court's holding today "allow[s] a common scheme to be proven by the simple expedient of aggregating similar criminal acts without regard to the time frame within which those acts occurred and without regard to whether those acts were actually part of a common purpose or plan to commit the offense at issue." *Aakre*, 46 P.3d at 654.  The majority plainly writes that "Anna's and Beth's testimony have at least *the same amount of similarities* as the accounts in *Merida*[,]" 960 A.2d at 232, to be admitted as proof of a plan.  But it is fundamental that "[e]vidence of other crimes must be connected by point of time and circumstance.  Through this commonality, proof of one act may reasonably prove a second.  However, the passage of time between the commission of the two acts slowly erodes the commonality between them." *Jones*, 369 S.E.2d at 824.  Despite this erosion, the majority declares that "the length of time that spans between defendant's alleged abuse against Beth and Anna does not alter our holding."  By aggregating the incidents concerning Anna and Beth without considering the decade-plus interval separating them, "the limited purpose for allowing common scheme evidence under Rule 404(b) [is] effectively nullified." *Aakre*, 46 P.3d at 654.  After all, logic dictates that both similarity *and* proximity in time are prerequisites to inferring the existence of a plan because "admission of uncharged misconduct evidence to show a plan

'comes perilously close' to using such evidence to show propensity * * *." *Winter*, 648 A.2d at 629 (quoting *State v. Catsam*, 534 A.2d 184, 194 (Vt. 1987)). Accordingly, I firmly believe that "[t]he period of [thirteen to fifteen] years 'substantially negate[s] the plausibility of the existence of an ongoing and continuous plan to engage persistently in such deviant activities[,]'" and, "[a]s such, the reasoning that gave birth to Rule 404(b) exceptions is lost." *Jones*, 369 S.E.2d at 824 (quoting *State v. Shane*, 285 S.E.2d 813, 821 (N.C. 1982)).

Additionally, when giving the jury the requisite limiting instruction, *see State v. Garcia*, 743 A.2d 1038, 1052 (R.I. 2000), the trial justice is required to specify the *particular* Rule 404(b) exception for which the evidence is being introduced. *See State v. Sorel*, 746 A.2d 704, 707 (R.I. 2000); *State v. Gomes*, 690 A.2d 310, 317 (R.I. 1997); *State v. Brown*, 626 A.2d 228, 234 (R.I. 1993); *Jalette*, 119 R.I. at 627, 382 A.2d at 533. The Seventh Circuit has cogently explained the reason for this necessity:

> "Because other-act evidence can serve several purposes at once, evidentiary disputes under Rule 404(b) often raise the following question: Does a permissible ultimate purpose (say, proof of the defendant's knowledge or intent) cleanse an impermissible subsidiary purpose (propensity)? On the surface the rule seems to permit this. But if * * * the rule allows the admission of other bad acts whenever they can be connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose), then the bar against propensity evidence would be virtually meaningless." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014); *accord United States v. Miller*, 673 F.3d 688, 696-97 (7th Cir. 2012) (explaining that the "list of exceptions in Rule 404(b), if applied mechanically, would overwhelm the central principle" of the rule because "[a]lmost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more of" the permissible purposes (quoting *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987))).

In an effort "[t]o resolve this inherent tension in the rule," the trial justice is called upon to examine "the chain of reasoning that supports the non-propensity purpose for admitting the

evidence." *Gomez*, 763 F.3d at 856; *see also Jalette*, 119 R.I. at 627, 382 A.2d at 533 ("In seeking to attain this particular goal [that the applicable exception is relevant to proving the charge lodged against the defendant], the trial court may insist that the prosecutor point to the specific exception on which he relies and show how that exception relates to the pending charge."). The evidence should be excluded under Rule 404(b) "if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Gomez*, 763 F.3d at 856. To that end, the trial justice "should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.*

Here, the trial justice listed the following exceptions when he instructed the jury as to the limited purposes for Beth's testimony: motive, opportunity, intent, preparation, and plan. The majority now designates but one of those exceptions (plan) as the permissible basis for admitting Beth's testimony. I do not believe that *any* of these exceptions applies, let alone all of them. It seems obvious that neither motive nor intent was "at issue" in this case, and therefore, Beth's testimony could not have been admitted to shed light on those issues. *Quattrocchi*, 681 A.2d at 886; *see also United States v. Lee*, 724 F.3d 968, 976 (7th Cir. 2013) ("Simply because a subject like intent is formally at issue when the defendant has claimed innocence and the government is obliged to prove his intent as an element of his guilt [it] does not automatically open the door to proof of the defendant's other wrongful acts for purposes of establishing his intent."); *Freeman v. State*, 486 P.2d 967, 977 (Alaska 1971) ("Manifestly, where there is no dispute as to the issue of the accused's intent, evidence going merely to intent will be superfluous, and its only possible effect will be a deleterious one."). Notwithstanding the irrelevance, and thus inapplicability, of these exceptions, I also fail to fathom how the motive, opportunity, intent, preparation, or plan to

commit the charged acts could be demonstrated by alleged misconduct that did not occur until a decade and a half *later*. In other words, how could something that defendant did in 2003 have any tendency to prove his motive, intent, etc., in 1988?[7]

But, even assuming there were a single permissible Rule 404(b) exception, I believe that the trial justice's instruction did not specify the particular, limited purpose for which the jury could use Beth's testimony.[8] *See Jalette*, 119 R.I. at 627-28, 382 A.2d at 533 ("In its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the 'other crimes' evidence is relevant and delete from its charge the remaining exceptions."). Instead, the trial justice broadly listed multiple grounds for the admission of Beth's testimony, and this Court has now selected the one that it believes best fits the facts of the case (even though it does not). In my opinion, this is not a sufficient basis for the admission of this testimony. After all, "the grounds for admission specified in Rule 404(b) are not magic words, the utterance of which automatically admits all uncharged misconduct evidence." *Winter*, 648 A.2d at 627. Yet this Court now sanctions a situation where the trial justice can simply list all Rule 404(b) exceptions when he imparts a "limiting" instruction to the jury. On appeal, this Court (if it hews

---

[7] I do not suggest that none of the Rule 404(b) exceptions could *ever* apply to a subsequent bad act, but it seems clear to me that only very limited and unusual facts and circumstances would allow for the use of such evidence. For example, a subsequent act that is part of a continuing course of conduct or larger plan or scheme might be admitted as tending to prove the commission of the earlier crime charged. *See, e.g.*, *Commonwealth v. Hanlon*, 694 N.E.2d 358, 367 (Mass. App. Ct. 1998) ("Although the last witness claimed to have been abused in 1990 and 1991, nine years after the last charged act, this testimony was not too remote, given the *continuing nature of the pattern*, and the striking similarity of each incident to the charged acts." (Emphasis added.)). Of course, as in the instance of prior acts, if "subsequent acts are too remotely related to the act upon which the prosecution is based, in point of time, to be without probative force, such evidence should not be admitted." *Harrison v. State*, 178 So. 458, 459 (Ala. 1937).

[8] I acknowledge that there was no objection raised to the trial justice's cautionary instruction.

to the majority's approach) may simply opine as to whether any one of them applies. By this decision, the trial justice is now relieved of the burden to examine the "chain of reasoning" to discern whether the evidence's "relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Gomez*, 763 F.3d at 856.

In this case, none of the purposes listed by the trial justice were even "genuinely in issue." *Winter*, 648 A.2d at 627. And again, even taking the enunciated exceptions at face value, the fact that the 404(b) evidence consisted of an incident so many years after the crimes charged simply precludes its use for those purposes. This conclusion is buttressed by examining "*how* exactly the evidence [was] relevant to [those] purpose[s]—or more specifically, how the evidence [was] relevant without relying on a propensity inference." *Gomez*, 763 F.3d at 856. It seems clear to me that defendant's later sexual abuse of Beth "was relevant to his motive, intent, [and] plan * * * with respect to the acts for which he was tried only insofar as the [subsequent] sexual abuse tended to show a propensity to commit such acts. Rule 404(b) flatly proscribes the admission of other act evidence for this purpose." *United States v. Fawbush*, 634 F.3d 420, 422 (8th Cir. 2011); *see also State v. Kirsch*, 662 A.2d 937, 943 (N.H. 1995) ("Whether nominally labeled motive, intent or common plan, the ostensible purpose for which the prosecution sought to admit evidence of a multitude of other uncharged sexual assaults was to show the defendant's predilection for molesting young females * * *. At most, this is evidence of the defendant's disposition to commit the offenses with which he was charged, impermissible under Rule 404(b). Because it was not relevant for a permissible purpose, the evidence should have been excluded, and its introduction was an abuse of discretion.").

To quote the articulate admonitory words of the late Chief Justice Weisberger: "In sum the only purpose of this testimony was to show propensity. * * * This result Rule 404(b) will not

permit by its express terms. * * * I fear that the opinion of the majority would cause the exceptions set forth in Rule 404(b) * * * to swallow the rule and render it a nullity." *Hopkins*, 698 A.2d at 190-91 (Weisberger, C.J., dissenting). Although "[t]he line between Rule 404(b) evidence presented for the impermissible purpose of demonstrating propensity and Rule 404(b) evidence presented for one of the specific non-propensity exceptions is 'both a fine one to draw and an even more difficult one for judges and juries to follow[,]'" *State v. Brown*, 900 A.2d 1155, 1160 (R.I. 2006) (quoting *Garcia*, 743 A.2d at 1052), we must draw the line somewhere so as not to eviscerate the rule.

### 3

### Reasonably Necessary

Even assuming that the 404(b) evidence were nonremote and similar, and further assuming it was admitted only to prove a relevant Rule 404(b) exception, it would have been admissible only if it were reasonably necessary to prove the crimes charged. "In determining whether evidence is necessary to establish the state's *prima facie* case, 'the test we must apply is what appeared to be reasonably necessary to the trial justice *at the time* [the testimony is offered].'" *Brigham*, 638 A.2d at 1046 (quoting *Pignolet*, 465 A.2d at 182). As a preliminary matter, I do find it significant that the state did not find Beth's testimony to be necessary to prove its case until the eve of trial—when Beth texted the prosecutor, and not the other way around. In other words, the state was fully prepared to go to trial without her. Thus, at the time the testimony was offered, *see id.*, I believe the trial justice should have taken this lack of need into account.

I agree with the statement of the majority that, because she was an adult when she testified, Anna should not have been afforded the same latitude as child complainants. *See*

*Mohapatra*, 880 A.2d at 808 ("When charges of sexual abuse hinge upon a credibility contest between defendant and *child* complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony." (Emphasis added.)). But, in my opinion, the Court is now extending that latitude to her anyway. The majority reasons that Beth's testimony was necessary because the case was entirely a credibility contest between defendant and Anna.[9] This is precisely the rationale that underlies the *child* complainant cases cited by the majority. *See State v. Perez*, 161 A.3d 487, 497 (R.I. 2017); *Mohapatra*, 880 A.2d at 808; *Hopkins*, 698 A.2d at 187. *But see Cavanaugh*, 158 A.3d at 281 (involving a late disclosure by an adult complaining witness and quoting *Mohapatra*, 880 A.2d at 808, for the proposition that "[w]hen charges of sexual abuse hinge upon a credibility contest between [a] defendant and [child] complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony").

As the majority sees it, any case prompted by a late disclosure or without physical evidence (be it a sexual assault or molestation case or otherwise) is nothing more than a credibility contest in which evidence of a defendant's other bad acts can be admitted to bolster the complainant's testimony. There is no longer any regard for whether the complaining witness is a child, who may be unable to handle the pressures of testifying and accurately recount traumatic events, or an adult. In fact, a defendant need not even testify to render a trial a credibility contest; the sole fact that the defendant goes to trial is apparently enough. Mere cross-examination of a complaining witness to test the veracity of his or her testimony transforms a trial on only those crimes charged into a free-for-all whereby the state can show that the defendant is a bad person who should be convicted.

---

[9] It is noteworthy that defendant did not testify.

"Mere weakness of the prosecution's case is insufficient reason to admit irrelevant and prejudicial evidence." *State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993). Yet the majority approves of the trial justice's allowing Beth to testify simply because the state had the burden of proof and had no evidence other than the testimony of Anna. I do not agree that those reasons make Beth's testimony reasonably necessary to prove the charges against defendant.

## Conclusion

Even a defendant charged with the most despicable of acts is entitled to be tried with evidence that is relevant and which does not highlight his propensity for criminal acts. Because I believe that the testimony of Beth was improperly admitted, I most respectfully dissent from the Court's holding in this case and would vacate the conviction and remand the matter to the Superior Court for a new trial.

**Justice Robinson, dissenting.** While I join in Justice Flaherty's thoughtful dissent, which is predicated on Rule 404(b) considerations, it is my further view that, even if Rule 404(b) did not require exclusion of the evidence relative to defendant's purported actions vis-à-vis Beth, that evidence should definitely have been excluded pursuant to Rule 403 of the Rhode Island Rules of Evidence. *See State v. Gaspar*, 982 A.2d 140, 147-49 (R.I. 2009).

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. John Rainey. |
| **Case Number** | No. 2014-348-M.P.<br>(P1/12-463A) |
| **Date Opinion Filed** | January 11, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Jane M. McSoley<br>Department of Attorney General |
| | For Defendant:<br><br>Kara J. Maguire<br>Office of the Public Defender |